No. 25-8056

# In the United States Court of Appeals for the Ninth Circuit

ELIZABETH MIRABELLI, an individual, on behalf
of herself and all others similarly situated; LORI
ANN WEST, an individual, on behalf of herself
and all others similarly situated, et al.,
Plaintiffs-Appellees,

v.

ROB BONTA, in his official capacity as
the Attorney General of California, et al.,
Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of California
Honorable Roger T. Benitez
(3:23-cv-768-BEN)

## PLAINTIFFS-APPELLEES' OPPOSITION TO
MOTION FOR STAY PENDING APPEAL

CHARLES S. LIMANDRI
PAUL M. JONNA
JEFFREY M. TRISSELL
**LiMANDRI & JONNA LLP**
Post Office Box 9120
Rancho Santa Fe, CA 92067
(858) 759-9930
*pjonna@limandri.com*

PETER BREEN
MICHAEL MCHALE
CHRISTOPHER J.F. GALIARDO
**THOMAS MORE SOCIETY**
309 W. Washington St., Ste. 1250
Chicago, IL 60606
(312) 782-1680
*pbreen@thomasmoresociety.org*

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

STATEMENT OF THE CASE .......................................................... 4

ARGUMENT .................................................................................. 13

    I.  Defendants Have Not Made a Strong Showing of Likely
       Success on the Merits ........................................................... 14

      A. The Scope of the District Court's Ordered Relief Is
          Likely to Be Affirmed. ................................................ 14

      B. The District Court's Order Is Likely to Be Affirmed
          on the Merits ................................................................ 18

    II. The Equitable Factors Counsel Against a Stay ............................ 24

CONCLUSION ............................................................................... 26

STATEMENT OF RELATED CASES ............................................ 27

REQUEST FOR ORAL ARGUMENT ........................................... 28

CERTIFICATE OF COMPLIANCE .............................................. 29

CERTIFICATE OF SERVICE ....................................................... 30

# TABLE OF AUTHORITIES

*Cases:*

*Bacon v. Woodward,*
    104 F.4th 744 (9th Cir. 2024)........................................................23

*Baird v. Bonta,*
    81 F.4th 1036 (9th Cir. 2023)......................................................24

*Bates v. United Parcel Serv., Inc.,*
    511 F.3d 974 (9th Cir. 2007) .......................................................15

*Bethel Sch. Dist. No. 403 v. Fraser,*
    478 U.S. 675 (1986) .....................................................................19

*Carolina Youth Action Project v. Wilson,*
    60 F.4th 770 (4th Cir. 2023).........................................................15

*Davidson v. Kimberly-Clark Corp.,*
    889 F.3d 956 (9th Cir. 2018) .......................................................17

*Davis v. Lab'y Corp. of Am. Holdings,*
    2024 WL 489288 (9th Cir. 2024)..................................................15

*Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Ed.,*
    158 F.4th 732 (6th Cir. 2025).......................................................19

*Doe No.1 v. Bethel Loc. Sch. Dist.,*
    2025 WL 2453836 (6th Cir. 2025)................................................21

*Doe v. Horne,*
    115 F.4th 1083 (9th Cir. 2024).....................................................19

*Dunson v. Cordis Corp.,*
    2016 WL 10679457 (N.D. Cal. 2016) ..........................................13

*DZ Rsrv. v. Meta Platforms, Inc.,*
    96 F.4th 1223 (9th Cir. 2024)........................................................16

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.,*
    82 F.4th 664 (9th Cir. 2023) ........................................................ 23

*Fields v. Palmdale Sch. Dist.,*
    427 F.3d 1197 (9th Cir. 2005),
    *amended,* 447 F.3d 1187 (9th Cir. 2006) ...................................... 18

*Foote v. Ludlow School Committee,*
    128 F.4th 336 (1st Cir. 2025) ...................................................... 19

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021) ..................................................................... 23

*Harvest Rock Church, Inc. v. Newsom,*
    985 F.3d 771 (9th Cir. 2021) ...................................................... 27

*Hill v. NCAA,*
    7 Cal. 4th 1 (1994) ........................................................................ 5

*Hyland v. Navient Corp.,*
    48 F.4th 110 (2d Cir. 2022) ........................................................ 15

*In re N.R.,*
    87 Cal. App. 5th 1187 (2023) ...................................................... 20

*Int'l Partners for Ethical Care Inc. v. Ferguson,*
    146 F.4th 841 (9th Cir. 2025) ...................................................... 17

*J.D. v. Azar,*
    925 F.3d 1291 (D.C. Cir. 2019) .............................................. 15, 16

*Jackler v. Byrne,*
    658 F.3d 225 (2d Cir. 2011) ........................................................ 22

*Janus v. AFSCME, Council 31,*
    585 U.S. 878 (2018) ..................................................................... 22

*John and Jane Parents 1 v. Montgomery Cty. Bd. of Educ.,*
    78 F.4th 622 (4th Cir. 2023) ....................................................... 16

iii

*Kennedy v. Bremerton Sch. Dist.*,
  597 U.S. 507 (2022) ............................................................ 22, 23

*Lee v. Poudre Sch. Dist. R-1*,
  -- S. Ct. --, No. 25-89, 2025 WL 2906469 (U.S., 2025) .................... 3

*Lumpkin v. Brown*,
  109 F.3d 1498 (9th Cir. 1997) ........................................... 22

*Mahmoud v. Taylor*,
  606 U.S. 522 (2025) ..................................... 3, 17, 21, 22

*Miller v. McDonald*,
  2025 WL 3506969 (U.S., 2025) ....................................... 21

*Mueller v. Auker*,
  700 F.3d 1180 (9th Cir. 2012) ........................................ 20

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ................................... 15, 16

*Parents Involved Comm. Schs. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007) ..................................................... 17

*Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*,
  145 S. Ct. 14 (2024) ..................................................... 16

*Parham v. J.R.*,
  442 U.S. 584 (1979) ..................................................... 20

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ......................................... 14

*People v. Chino Valley Unified Sch. Dist.*,
  2024 WL 5442638 (Cal. Super. Ct. 2024) ........................ 11, 19

*Regino v. Staley*,
  133 F.4th 951 (9th Cir. 2025)...................................... 12, 18

*Ricard v. Geary Cty. Unified Sch. Dist. 475*,
  2022 WL 1471372 (D. Kan. 2022) ................................... 20

iv

*Santosky v. Kramer,*
    455 U.S. 745 (1982) ....................................................................... 20

*Stanley v. Illinois,*
    405 U.S. 645 (1972) ....................................................................... 20

*Tandon v. Newsom,*
    593 U.S. 61 (2021) ......................................................................... 23

*Tennessee v. Cardona,*
    737 F. Supp. 3d 510 (E.D. Ky. 2024) ........................................... 19

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ....................................................................... 15

*Troxel v. Granville,*
    530 U.S. 57 (2000) ......................................................................... 20

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ....................................................................... 14

*Wallis v. Spencer,*
    202 F.3d 1126 (9th Cir. 2000) ....................................................... 20

*Washington v. United States Dep't of Educ.,*
    -- F.4th --, 2025 WL 3486895 (9th Cir. 2025) ........................ 13, 24

*Wilderness Soc., Inc. v. Rey,*
    622 F.3d 1251 (9th Cir. 2010) ....................................................... 17

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972) ................................................................. 21, 22

### Statutes & Rules

9th Cir. Gen. Ord. 4.1(a) ....................................................................... 27

9th Cir. Gen. Ord. 6.3(g)(4) ................................................................... 28

9th Cir. Rule 28-2.6(b) ........................................................................... 27

9th Cir. Rule 32-3(2) .............................................................................. 29

AB 1266 (2013) ................................................................. 4

AB 1955 (2024) ......................................................... 10, 11

Cal. Code Regs. tit. 22, §83001(g)(2) ................................. 17

Cal. Educ. Code §220.5(a) ............................................... 10

CVUSD, BP 5010(a)(1) .................................................. 11

Fed. R. App. P. 27(d)(2) .................................................. 29

Fed. R. App. P. 32(g)(1) .................................................. 29

Fed. R. Civ. P. 23(b)(2) .................................................. 15

# INTRODUCTION

After arguing in September of this year that Plaintiffs' claims were "moot" because California's challenged "FAQ guidance" in this case was "unequivocally … no longer in effect," 4-Plt.Exs-764,[1] Defendants now say the district court's order enjoining the underlying requirements of that very "guidance" creates a state of emergency requiring this Court's immediate intervention. Although Defendants ceased arguing mootness in November, their brazen litigation posturing throughout this case only confirms their inability to succeed on the merits—i.e., to justify policies that require hiding from parents their own children's gender identity expression at school, and that unconstitutionally *presume* parental unfitness to receive this information.

The multipart permanent injunction here, entered after full discovery and a searching review of the record, and which Defendants seek to stay in its entirety, does not "sow chaos." It merely ensures that parents of children in California's public schools will be *notified—and not misled—*when their children express gender identities different from their biological sex (i.e., "gender incongruency") at school. 1-Plt.Exs-8; 1-Plt.Exs-26. It otherwise ensures *individual accommodation* for parents who don't want *their* children being treated contrary to their biological sex. 1-Plt.Exs-8.

---

[1] "Plt.Exs" refers to exhibits submitted with this brief.

Indeed, while Defendants allege teachers will be confused about what specific laws are enjoined, they do not dispute that in 2016, the California Department of Education ("CDE") published an FAQ page stating that public schools are generally *forbidden* from "sharing" the disclosure of a student's "transgender status … *with the students' parents,*" (hereafter, "Parental Exclusion Policy"). 9-Plt.Exs-2132. The CDE also circulated "model policies" to ensure minimum compliance with the law and which were adopted by school districts across the State.

Defendants also do not dispute that Child Poe *attempted suicide* approximately one year after she began publicly identifying as transgender at school. Her transition occurred without her parents' knowledge because her school had adopted the CDE's Parental Exclusion Policy. Even after these Plaintiffs moved their daughter to a different instate public school, the new school refuses to accommodate their request to use their daughter's birth name and pronouns because of that same policy. 5-Plt.Exs-1239-67; 3-Plt.Exs-605-10.

Defendants attempt to misdirect by insisting the district court failed to find the absent class members have "standing." But that argument flies in the face of controlling en banc Ninth Circuit precedent that a class-wide injunction lies so long as *one* named Plaintiff has standing (and Defendants do not challenge individual standing in their stay motion). And it amounts to what multiple Supreme Court Justices have recognized as an attempt "to avoid confronting" the *common* parental rights

2

question at issue in this case. *Lee v. Poudre Sch. Dist. R-1*, -- S. Ct. --, No. 25-89, 2025 WL 2906469 (U.S., 2025) (Alito, J., joined by Thomas, J., and Gorsuch, J., statement respecting denial of certiorari). This is unquestionably true after the Supreme Court's recent decision in *Mahmoud v. Taylor*, 606 U.S. 522 (2025). Defendants' Parental Exclusion Policy is, *at minimum*, the kind of "subtle form of interference with [Plaintiffs' and class members'] religious upbringing of [their] children" that triggers strict scrutiny under *Mahmoud*. *Id.* at 548. Any alleged resulting administrative burdens from merely providing notice and accommodations also fail strict scrutiny under *Mahmoud*—which Defendants do not even *attempt* to satisfy anyway.

A similar analysis holds for the Plaintiff and class-member-teachers who object to being forced to hide (and lie about) students' expressed gender incongruency pursuant to Defendants' policies. Defendants point to a "compelling need" exemption—but that is exactly the kind of *individualized exemption* that triggers scrutiny under the Free Exercise Clause.

Lacking any evidence of harm, Defendants instead rely on hyperbole—including that a reasoned permanent injunction entered after years of litigation allegedly will "gravely harm students." Mot.1, 23. The lack of cited evidence in the record is unsurprising: All evidence is to the contrary (*including from Defendants' own experts*). Nor did the district court make erroneous "assumption[s]" regarding California law, Mot.9,

3

but received extensive briefing over three years on California law, including the mandatory reporter statutes the court cited. 1-Plt.Exs-15. Further, Defendants' own actions undermine their allegations of student "harm"—including their decisions to *not enforce* their parental exclusion requirements against two large school districts (including the defendant school district here) which educate more than *30,000 students* across dozens of schools.

Meanwhile, the ongoing application of Defendants' Parental Exclusion Policy is a continuous violation of Plaintiffs and class members' constitutional rights which cannot be undone, and (as confirmed in this case) pose an imminent threat to their children's health and well-being. This Court should accordingly deny Defendants' motion.

## STATEMENT OF THE CASE

**A.** In 2016, the CDE worked with outside advocacy groups to publish a "Legal Advisory regarding application of California's antidiscrimination statutes to transgender youth in schools," with accompanying FAQs.[2] 21-Plt.Exs-5369-91 (emails); 9-Plt.Exs-2003-04, 2124-38 (Depo.). Although the FAQs purported to be tied to AB 1266 (2013), they in fact set out the CDE's interpretation of all provisions of California law governing gender-identity issues in public schools. 9-Plt.Exs-2127-38 (citing, *inter alia*, Cal. Const. and FERPA).

---

[2] *Available at* https://bit.ly/49hQT6G; https://bit.ly/4j9ROdA.

4

In the FAQs, the CDE stated that (1) "school districts should accept and respect a student's assertion of their gender identity where the student expresses that identity at school," (2) "schools **must** consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's family"; (3) "schools are **required** to respect the limitations that a student places on the disclosure of their transgender status, **including not sharing that information with the student's parents**" except where "there is a specific and compelling 'need to know'"; and (4) "[a] transgender student's right to privacy does not restrict a student's right to openly discuss and express their gender identity or to decide when or with whom to share private information." 9-Plt.Exs-2130-33 (emphasis added). The "compelling" interest exception comes from judicial interpretations of the Privacy Clause of the California Constitution. *Hill v. NCAA*, 7 Cal. 4th 1, 47 (1994).

The CDE intended the Legal Advisory to set a floor for school district compliance with the law, 9-Plt.Exs-2004-05, and linked to model policies and regulations. 9-Plt.Exs-2005, 2170-2206. At the time, school districts statewide received or were notified of the Legal Advisory. 9-Plt.Exs-2006-07. Relying on the CDE, Attorney General Bonta also posted a "State of Pride" page on the California DOJ website stating that

5

no school has the right to "out" a student without his or her permission, including to the students' parents. 10-Plt.Exs-2383-89, 2481-85 (Depo.).[3]

**B.** Plaintiffs Elizabeth Mirabelli and Lori Ann West taught at the Escondido Union School District ("EUSD"), a K-8 district in San Diego County that serves roughly 14,000 students. 22-Plt.Exs-5518-21, 5540 (Complaint). They filed suit in April 2023 after EUSD denied their requests for religious accommodations from forced compliance with EUSD's Parental Exclusion Policy. They sued the EUSD Defendants, the CDE State Superintendent, and the CDE State Board of Education members. Dkt.1. They were subsequently placed on administrative leave, subjected to serial frivolous complaints and investigations, and driven out of school. 4-Plt.Exs-966-1051; 5-Plt.Exs-1053-1224 (declarations).

In June 2024, Mirabelli and West converted the action into a putative class action, adding two more EUSD teachers pseudonymously (Teachers Jane Roe and Jane Boe), and the Poe and Doe Families as parent-plaintiffs. Dkt.118. Teachers Roe and Boe also objected on religious grounds to deceiving parents. 5-Plt.Exs.1225-38.

The Poe Family's daughter ("Child Poe") attended Clovis Unified School District ("CUSD") schools and began identifying as transgender upon entering seventh grade in Fall 2022. She socially transitioned for that entire academic year without her parents' knowledge or consent. In March 2023, her parents obtained counseling for her because they could

---

[3] *Available at* https://bit.ly/49ayGrt.

6

tell she was unwell but did not know why. Only when Child Poe unsuccessfully attempted suicide six months later did doctors inform her parents about her ongoing gender transition at school. 5-Plt.Exs-1240-42.

After Child Poe was released from the hospital, her parents moved her to CUSD's online public school and then to Yosemite Valley Charter School ("YVCS")—another online school. But CDE's Parental Exclusion Policy dogged them at each step. Because the Poes cannot afford private school, they have repeatedly instructed YVCS to not use their daughter's preferred name and pronouns, but YVCS has ignored their instructions. 5-Plt.Exs-1243-45, 1252-67; 3-Plt.Exs-606-10.

The Doe Family's daughter ("Child Doe") attends Pasadena Unified School District ("PUSD") schools. She began identifying as a boy at school, without informing her parents, sometime during her fifth-grade year starting Fall 2020. Her transgender identity intensified when she started sixth grade. In September 2021, Child Doe informed her parents she was transgender; they disagreed and forbade transition. Child Doe complied at the time, but her school later continued to socially transition her without her parents' knowledge. 5-Plt.Exs-1279-83.

Child Doe's parents discovered this unauthorized transition the next year when their daughter was in seventh grade. They confronted the principal, who denied the transitioning was occurring at school even while admitting that, if it was, it would be kept secret pursuant to the CDE's Parental Exclusion Policy. 5-Plt.Exs-1283-85, 1291-94. Towards

the end of seventh grade, Child Doe appeared to desist and informed her parents that she was not transgender. But then, near the end of eighth grade, her parents discovered she had re-transitioned at school. 5-Plt.Exs-1285-86. They moved her to a new school within PUSD because they cannot afford private schooling. 5-Plt.Exs-1287-89. Presently, they believe she has re-desisted but cannot know because PUSD continues to follow the CDE's Parental Exclusion Policy.

**C.** Immediately upon filing this action in April 2023, Plaintiffs Mirabelli and West moved for a preliminary injunction. Dkt.5. The CDE Defendants opposed and moved to dismiss solely on standing grounds, arguing the FAQs were nonbinding guidance, so Plaintiffs allegedly could not trace their harm to the CDE or obtain redress via this suit. Dkt.9; Dkt.18-1; Dkt.25.

But the CDE later conceded that the laws cited in the FAQs are binding, 24-Plt.Exs-5995 (hearing transcript), and the CDE has supervisory authority over school districts and can seek an order compelling them to follow its understanding of the law, which it did with respect to Rocklin Unified School District for adopting a Parental Notification Policy. Similarly, the California Attorney General, on his own authority, sued the Chino Valley Unified School District ("CVUSD") for adopting a Parental Notification Policy. 21-Plt.Exs-5405-92.

In September 2023, the district court granted Mirabelli and West a preliminary injunction and denied the CDE Defendants' motion to

dismiss. 1-Plt.Exs-138-73. Although the preliminary injunction only protected Mirabelli and West, EUSD applied it districtwide. When EUSD advised the Attorney General of its plan, he warned EUSD the plan was illegal and could prompt an enforcement action. 23-Plt.Exs-5987-88; 12-Plt.Exs-2892-96.

The CDE Defendants then moved for judgment on the pleadings. Dkt.53. At the January 2024 hearing, the district court pressed the CDE Defendants about who bore ultimate responsibility for the statewide prevalence of Parental Exclusion Policies. After that discussion, the court ordered Plaintiffs to add the California Attorney General as a defendant. 1-Plt.Exs-136-37; 23-Plt.Exs-5984-85.

Attorney General Bonta moved to dismiss on standing. Dkt.96. The district court was unpersuaded, so the Attorney General represented at the April 2024 hearing that he would "disavow any enforcement action against EUSD for any actions that EUSD takes in compliance with this Court's order." 23-Plt.Exs-5901. The district court then dismissed him. 1-Plt.Exs-128-35.

**D.** When Plaintiffs moved to convert this case to a class-action in June 2024, they also moved to re-add Attorney General Bonta. Dkt.118. Although no longer a party, Attorney General Bonta opposed the motion and renewed his standing arguments. Dkt.123. At the hearing, the district court noted Defendants' attempts to shift blame to each other, likening its task to "wrestling with a bowl of Jell-O." 21-Plt.Exs-5353-54,

5366. The district court rejected the standing arguments and granted leave to amend. 1-Plt.Exs-119-27.

Plaintiffs then moved for summary judgment and entry of a permanent injunction or, alternatively, a class-wide preliminary injunction. Dkt.137. But the district court granted the Attorney General's stay request pending discovery. Dkt.142; Dkt.144; Dkt.221. Plaintiffs later filed a class-wide preliminary-injunction motion, on which the district court also deferred ruling. Dkt.153; Dkt.240.

Defendants moved to dismiss, again on standing grounds. Dkt.150; Dkt.156. At the December 2024 hearing, the district court characterized the various defendants' arguments as a "circular firing squad." 21-Plt.Exs-5310-11. Ultimately, it found standing as to both the Attorney General and the CDE Defendants and denied the motions to dismiss. 1-Plt.Exs-93-118.

**E.** A week later, the CDE Defendants filed a motion to dismiss the action as moot. Dkt.195. The CDE Defendants removed their Legal Advisory and FAQs and replaced them with a new webpage tied to AB 1955 (2024), which prohibits, *inter alia*, school districts from adopting a policy *requiring* disclosure of a student's social transition to his parents, but not if "required by … federal law" and thus irrelevant here. Cal. Educ. Code §220.5(a). But because the new webpage stated, "AB 1955 does not

10

mandate non-disclosure," 21-Plt.Exs-5218,[4] the CDE Defendants argued Plaintiffs' claims were moot.

In response, Plaintiffs noted several oddities. First, the Attorney General had argued in his CVUSD case that the district's Parental *Notification* Policy violated both Equal Protection and Privacy rights. While the state superior court agreed as to the Equal Protection argument and enjoined the school's particular policy, it rejected the privacy argument, observing that:

> Children should generally not expect that school staff will keep secrets in general, keep requests made to them secret from parents, or keep secret from parents public (at school) information about a child given the fundamental rights of parents, parents' corresponding legal obligations, the *in loco parentis* status of staff.

*People v. Chino Valley Unified Sch. Dist.*, 2024 WL 5442638, *21 (Cal. Super. Ct. 2024). CVUSD, with its 26,500 students,[5] then adopted an updated Parental Notification Policy tracking the Superior Court's order by providing that parents will be notified whenever changes are made to a student's "official" or "unofficial" records. CVUSD, BP 5010(a)(1).[6] The Attorney General did not take resulting enforcement action, though he and the CDE continued to argue in other cases even after AB 1955 that autonomy-privacy rights from the California Constitution still mandate

---

[4] *Available at* https://bit.ly/4pafHmU.

[5] https://www.ed-data.org/district/san-bernardino/chino-valley-unified.

[6] https://files.smartsites.parentsquare.com/7144/bp_5010_5.pdf.

nondisclosure and confirmed that position in their depositions. 9-Plt.Exs-2067; 10-Plt.Exs-2275-2283.

Second, the CDE's Parental Exclusion Policy has filtered down to all school districts. So, even if the Attorney General and CDE had completely abandoned Parental Exclusion Policies (which they have not), the adoption of such policies by school districts statewide could be remediated only by a declaration of their illegality. *See, e.g.*, *Regino v. Staley*, 133 F.4th 951, 956 n.1 (9th Cir. 2025) (superintendent stating she understands 2016 FAQs to represent school's legal *obligations*). The court found these arguments persuasive and denied the motion to dismiss. 1-Plt.Exs-87-92.

**F.** At the end of extensive discovery, in July 2025 Plaintiffs filed renewed motions for class certification and for summary judgment and entry of a class-wide permanent injunction. 4-Plt.Exs-887-965. Although EUSD filed a cross-motion for summary judgment, the State Defendants did not. The summary judgment hearing was ultimately set for November 17, 2025. In the interim, the district court certified a modified class, 1-Plt.Exs-74-86, and severed and stayed the claims against EUSD. 1-Plt.Exs-63-66.

Before the summary judgment hearing, Plaintiffs discovered the CDE had incorporated references to its Parental Exclusion Policy in a new password-protected statewide teacher training titled "PRISM," and sought sanctions for the CDE continuing to argue mootness. 3-Plt.Exs-

470-572; 2-Plt.Exs-194-278. In response, the CDE withdrew its mootness argument but *also removed the material*. 3-Plt.Exs-462-69; 2-Plt.Exs-191-93.

At the November hearing, the State Defendants conceded there was no genuine dispute of material fact. 2-Plt.Exs-405. Then, on December 22 the district court granted Plaintiffs' summary judgment motion and entered a class-wide permanent injunction. 1-Plt.Exs-7-62.

## ARGUMENT

The Court applies four factors in deciding on a stay pending appeal: (1) whether there is "a strong showing that [the movant] is likely to succeed on the merits"; (2) whether he "will be irreparably injured absent a stay"; (3) whether a stay "will substantially injure the other parties"; and (4) "where the public interest lies." *Washington v. United States Dep't of Educ.*, -- F.4th --, 2025 WL 3486895, *1 (9th Cir. 2025). The first two factors "are the most critical, and the court will address the last two factors only once the applicant has satisfied the first two factors." *Id.* (internal marks omitted).[7]

---

[7] Defendants insist there are "at least serious legal questions that justify a stay." Mot.15. But "to justify a stay" on such a minimum showing, Defendants "must show that the balance of hardship tips *sharply* in [their] favor," *Dunson v. Cordis Corp.*, 2016 WL 10679457, *2 (N.D. Cal. 2016) (emphasis added), which they cannot. *See infra.*

13

## I.    Defendants Have Not Made a Strong Showing of Likely Success on the Merits.

Contrary to Defendants' arguments, the challenged injunction is merely tailored to the scope of Defendants' own illegal actions, and the CDE's Parental Exclusion Policy cannot stand under Supreme Court or Ninth Circuit precedent.

### A.    The Scope of the District Court's Ordered Relief Is Likely to Be Affirmed.

**1.** Defendants wrongly argue the absent *class members* "beyond the eight named plaintiffs" lack standing—thus conceding as they must that the named plaintiffs have standing. Mot.11-14. Class certification is reviewed for abuse of discretion. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1275 (9th Cir. 2019).

First, Defendants badly misread *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). They claim *CASA* requires district courts to assess what portion of class members have "standing to sue," and that the district court's class-wide injunction was thus an "end-run around *CASA*." Mot.11. That's absurd. *CASA* specifically explained its holding "rests solely on … the Judiciary Act of 1789" and "express[ed] *no view* on … Article III." *Id.* at 841 n.4. It then explained that, *unlike* universal injunctions, Rule 23's requirements are "virtually identical" to those for a "bill of peace" allowed in founding-era English courts. *Id.* at 849. In other words, *CASA* expressly distinguished (and approved) class-wide injunctions as compared

14

to universal injunctions *regardless* of whether class members have standing.

Second, Defendants' reliance on *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), is misplaced. Mot.11. This Court sitting en banc has held that even after *TransUnion*, "only one plaintiff need demonstrate standing to satisfy Article III standing" even "where a class sought injunctive or equitable relief." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (en banc). Defendants' attempt to cabin *Olean* to pre-certification class standing fails, Mot.13, because *Olean* expressly relied on *Bates* which addressed class-member standing *at the injunction stage*. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 984-88 (9th Cir. 2007) (en banc); *accord Davis v. Lab'y Corp. of Am. Holdings*, 2024 WL 489288, *2 n.1 (9th Cir. 2024); *Hyland v. Navient Corp.*, 48 F.4th 110, 118 n.1 (2d Cir. 2022); *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 778 (4th Cir. 2023).

This is particularly true here because Rule 23(b)(2)'s "principal purpose" is to remediate "classwide deprivations of protected rights." *J.D. v. Azar*, 925 F.3d 1291, 1314 (D.C. Cir. 2019). It is fundamental in Rule 23(b)(2) class actions that "[a]ll the class members need not be aggrieved by or desire to challenge defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)." *Id.*

Further, *Olean*'s rule is the logical extension of the rule that "in cases seeking injunctive or declaratory relief, only one plaintiff need

demonstrate standing to satisfy Article III." *Olean*, 31 F.4th at 682 n.32. Accordingly, this Court recently reaffirmed that, in a class action, "standing is satisfied if at least one named plaintiff meets the requirements." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024). Indeed, "[i]f even a *class representative*'s individual standing is immaterial as long as one representative has standing, an *absent class member*'s individual standing must be immaterial in that instance." *J.D.*, 925 F.3d at 1324.

**2.** Regardless, as the district court found, all class members have materially identical Article III injury because Parental Exclusion Policies directly interfere with all class member parents' rights to direct their children's upbringing, education, and medical treatment, and with teachers' own constitutional rights. 1-Plt.Exs-79.

Citing out-of-circuit precedents, Defendants claim "parents seeking to obtain information about their children's gender identity and expression at school lack standing." Mot.11-12. Those decisions clash with the informational injury doctrine and are manifestly dubious. *See Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*, 145 S. Ct. 14, 14 (2024) (Mem.) (Kavanaugh, J., would grant the petition) (Alito, J., joined by Thomas, J., dissenting from denial of certiorari); *John and Jane Parents 1 v. Montgomery Cty. Bd. of Educ.*, 78 F.4th 622, 639-43 (4th Cir. 2023) (Niemeyer, J., dissenting). After all, a legally cognizable injury is an "inability to rely on the validity of the information" provided.

16

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018); *see Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258-59 (9th Cir. 2010).

Nor is the injury here merely informational. The policies transfer the decision whether and how to respond to a child's gender incongruence from parents to schools even though a child's presentation of gender incongruence does not by itself mean that social transition is appropriate. 1-Plt.Exs-33-39. And nothing in Defendants' cited cases is as brazen as California's definition of "gender identity" as privileging a child's stated gender identity "without regard to any contrary statement by … a family member." Cal. Code Regs. tit. 22, §83001(g)(2).

Defendants' argument that only parents with gender incongruent children have standing fares no better. Mot.12. Under controlling precedent, the possibility that an education policy may not directly prejudice every plaintiff's child does not erase the injury of being subject to it. *Parents Involved Comm. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718-19 (2007). Here, all class members "are participating or will participate in California's public education system." 1-Plt.Exs-76. They are thus unlike the parent plaintiffs in *International Partners for Ethical Care Inc. v. Ferguson* whose children were not necessarily obtaining services from the covered shelters, and thus whose alleged injuries depended on a speculative series of events. 146 F.4th 841, 846-47 (9th Cir. 2025).

In the Free Exercise context, the Supreme Court's decision in *Mahmoud* also confirms standing. There, the Court recognized that a

17

school district's bar on notifying religious parents when it would present "LGBTQ+-inclusive storybooks" to students burdened those parents' religious rights and warranted an injunction "notify[ing] them in advance *whenever* one of the books in question or any other similar book is to be used in any way." 606 U.S. at 554-55, 569 (emphasis added). Here, Defendants' policies likewise bar notice to parents of their own children's manifested gender incongruency.

### B. The District Court's Order Is Likely to Be Affirmed on the Merits.

**1a.** Defendants first attack the district court's substantive-due-process analysis of parents' rights. Mot.15-17 (citing *Regino*, 133 F.4th at 960; *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005), *amended*, 447 F.3d 1187 (9th Cir. 2006)). The citations to *Regino* and *Fields* are apt. In *Fields*, this Court distinguished "[m]aking intimate decisions and controlling the state's dissemination of information regarding intimate matters," and held that schools may "not interfere with the right of the parents to make intimate decisions." 427 F.3d at 1208.

In *Regino*, the Court provided instructions to district courts on how to answer the question of whether Parental Exclusion Policies interfere with that right, 133 F.4th at 960-62, and the district court here carefully followed those instructions, 1-Plt.Exs-22-29, abiding by caselaw and treatises going back to the founding. 4-Plt.Exs-925-45 (summary judgment brief).

18

In contrast, Defendants cite a single case: *Foote v. Ludlow School Committee*, 128 F.4th 336 (1st Cir. 2025). Mot.16-17. *Foote* held that parents do not have the right to direct a social transition because it is not medical treatment, contrary to this Court's recognition that it *is* medical treatment. 1-Plt.Exs-21 n.5 (citing *Doe v. Horne*, 115 F.4th 1083, 1107 n.13 (9th Cir. 2024)). Moreover, *Foote* was decided at the pleadings stage—whereas the district court here had the benefit of a well-developed factual record with significant expert testimony on these issues. 128 F.4th at 344.

More importantly, as the district court explained, this is a "red herring." 1-Plt.Exs-33. Public schools "act '*in loco parentis'* ('in the place of parents') when they supervise children during the school day." *Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Ed.*, 158 F.4th 732, 745 (6th Cir. 2025) (en banc) (citing *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986)); *Chino Valley*, 2024 WL 5442638, *21. The right to information about such children thus inherently belongs to their parents, not public schools.

After examining three centuries of history and tradition, 7-Plt.Exs-1740, the district court unsurprisingly agreed with courts recognizing parents' constitutional right "to guide their own children on matters of identity, including the decision to adopt or reject various gender norms and behaviors," *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 556 (E.D. Ky. 2024), and "to have a say in what a minor child is called and by what

19

pronouns they are referred." *Ricard v. Geary Cty. Unified Sch. Dist. 475*, 2022 WL 1471372, *8 (D. Kan. 2022).

**1b.** Defendants next argue—*without citation*—that parental-rights claims require analysis of "individualized circumstances" because information may be withheld to avoid the risk of harm to the child. Mot.17. No one—least of all Plaintiffs—wants a child harmed. But the law presumes "fit parents act in the best interests of their children," *Troxel v. Granville*, 530 U.S. 57, 68 (2000), due to natural bonds of affection. *Parham v. J.R.*, 442 U.S. 584, 602 (1979).

This presumption can be overcome only by an individualized *judicial finding* that the parents are not acting in their child's best interest, *Santosky v. Kramer*, 455 U.S. 745, 768-69 (1982), or "[i]n an emergency situation." *Mueller v. Auker*, 700 F.3d 1180, 1187 (9th Cir. 2012); *accord Wallis v. Spencer*, 202 F.3d 1126, 1142 n.14 (9th Cir. 2000). Contrary to Defendants' unstated (and erroneous) premise, that presumption is not overcome simply because a child disagrees with her parents' decision. *Parham*, 442 U.S. at 603. Indeed, parental unfitness cannot be presumed categorically. *Stanley v. Illinois*, 405 U.S. 645, 657 (1972); *In re N.R.*, 87 Cal. App. 5th 1187, 1190, 1199-1201 (2023). And as a factual matter, not even Defendants' own experts believe a parent is unfit because he or she

does not affirm a child's desired gender transition. 1-Plt.Exs-15-16; 19-Plt.Exs-4741-42; 17-Plt.Exs-4309-12, 4315-16.[8]

**2.** For Free Exercise, Defendants fail to distinguish *Mahmoud*, which held that when "laws" "'substantially interfer[e] with the religious development' of the parents' children," strict scrutiny applies. 606 U.S. at 564-65 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972)). Defendants cite an unpublished, fractured, out-of-circuit opinion that limited *Mahmoud* to "curricular requirements." Mot.17-18 (quoting *Doe No.1 v. Bethel Loc. Sch. Dist.*, 2025 WL 2453836, *7 n.3 (6th Cir. 2025)). But as concurring Judge Larsen explained, *Mahmoud* is likely not limited to "instruction," but the school satisfied *Mahmoud* there because religious students already had an opt out (single-person, gender-neutral bathrooms). 2025 WL 2453836, *12-14. The issue is not "instruction" but the "character of the burden." *Accord Miller v. McDonald*, 2025 WL 3506969 (U.S., 2025) (vacating lower courts' refusal to enjoin New York student vaccine mandate as applied to Amish students in light of *Mahmoud*).

Defendants also falter in alleging that *Mahmoud* involved school *imposition* of contested values on students, whereas here schools are not imposing on students who *want* to conceal their gender identities from parents. Mot.17-18. That misses the point—which is that education policies which interfere with or threaten to undermine the *parents' religious*

---

[8] *Available at* https://youtu.be/GzEPwTfDFu0 at 51:20 (15:32); https://youtu.be/lTDxRy6bQIA at 27:18.

*beliefs,* regardless of the alleged "voluntary decision[s] of their young minor children," Mot.18, are subject to strict scrutiny. *Mahmoud*, 606 U.S. at 565; *Yoder*, 406 U.S. at 211-12.

**3a.** The district court rightly held that government teachers could only be compelled under the Free Speech Clause to deliver a "lawful message." 1-Plt.Exs-58-60 (quoting *Janus v. AFSCME, Council 31*, 585 U.S. 878, 908 (2018)). The claim thus rises and falls on parents' rights.

Defendants argue the district court should have applied the standard *Pickering* analysis for government-employee speech, rather than relying on *Janus*. Mot.19-20. But the core proposition—that government may not force public employees to speak unlawfully—does not depend on *Janus* alone. *See, e.g.*, *Jackler v. Byrne*, 658 F.3d 225, 240 (2d Cir. 2011). Defendants cite no contrary authority.

**3b.** Defendants also contend the district court should have applied *Pickering* to teachers' free exercise claims. Mot.20-21. Defendants did not raise this argument in opposing summary judgment and it is thus waived. 4-Plt.Exs-777-86. Regardless, it is a non-starter: while the Eighth Circuit has applied *Pickering* that way, this Court has not. *Lumpkin v. Brown* certainly did not. It merely applied *Pickering* to a Free Speech claim before engaging in an independent analysis under RFRA. 109 F.3d 1498, 1501 (9th Cir. 1997). *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 545 (2022) (Thomas, J., concurring) (noting the Supreme Court has never applied *Pickering* to a Free Exercise claim). And both

22

the Supreme Court and this Court routinely apply standard Free Exercise analysis to claims brought by government employees. *Kennedy*, 597 U.S. at 524-27; *Bacon v. Woodward*, 104 F.4th 744, 750-53 (9th Cir. 2024).

Here, the district court recognized that California's Parental Exclusion Policies are not generally applicable because they contain a "discretionary mechanism" for granting individualized exemptions. 1-Plt.Exs-163-64; 1-Plt.Exs-56 n.13 (citing *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021)).

Defendants contend that individualized exemptions do not trigger strict scrutiny if they are "tied to particularized, objective criteria." Mot.21. But Defendants confirmed in discovery that they use the terms "need to know," "legitimate," and "compelling" as a standardless tautology, 21-Plt.Exs-5398 (ROG #6), which again triggers strict scrutiny. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 688 (9th Cir. 2023) (en banc) ("broad discretion to grant exemptions on less than clear considerations" renders anti-discrimination policies non-generally applicable).

Finally, Defendants do not attempt to satisfy strict scrutiny and thus have waived any such argument. They merely allege that "heightened scrutiny" cannot be "applied in one fell swoop," Mot.21—ignoring that heightened scrutiny invariably applies to anyone similarly situated to a plaintiff who successfully challenges a wide-sweeping law. *Tandon v. Newsom*, 593 U.S. 61, 64 (2021). The same is no less true where, as

23

here, absent class members are suffering the *same* essential harms as Plaintiffs relative to Defendants' statewide Parental Exclusion Policies.

## II. The Equitable Factors Counsel Against a Stay.

Defendants also fail to meet the three equitable factors needed for a stay. *Washington*, 2025 WL 3486895, *1.

**A.** On irreparable harm, California "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). This factor favors Plaintiffs.

**B.** Regarding balance of harms, Defendants contend parents will "still have meaningful ways to engage with their child" such as by "raising the issue of gender identity with their child at home." Mot.24. But as Plaintiffs' experiences confirm, the harm here is Defendants' hindering parents' ability to know about, and consent or object to, their child's gender transition—and forcing teachers to participate and then mislead parents. 3-Plt.Exs-605-10; 5-Plt.Exs-1231-38.

**C.** On the public interest, California is left to cite its own legislative findings and an online article for the proposition that involving parents somehow harms children, Mot.23-24, because "[t]he defense experts do not meaningfully disagree" with Plaintiffs' experts. 1-Plt.Exs-34-37. But it is "always in the public interest to prevent the violation of a party's constitutional rights," *Baird*, 81 F.4th at 1040, and California cannot run away from its experts now. 3-Plt.Exs-597-604 (sham affidavit rule applies

24

to experts). Defendants lost on summary judgment on this point—these self-serving, bare citations do not suffice to create a material issue of fact in the teeth of the full evidentiary record.

Further, as the district court recognized, Defendants' assertion of an emergency requiring a stay pending appeal rings hollow in light of their own litigation "posturing" throughout this case. 1-Plt.Exs-2. From June 2023 through December 2024, Defendants vigorously insisted that Plaintiffs lacked standing because the challenged FAQs were allegedly non-binding, 21-Plt.Exs-5243-45, and then from January through November 2025 argued that Plaintiffs' claims were moot because the FAQs were "withdrawn." 21-Plt.Exs-5206-08; 2-Plt.Exs-291-93. Defendants even mocked Plaintiffs for suing over an allegedly "nonexistent webpage that contained nonbinding guidance in a withdrawn FAQ, formerly issued by the California Department of Education." 3-Plt.Exs-737.

The Attorney General also *specifically disavowed enforcement* against EUSD *after* it stopped enforcing Defendants' Parental Exclusion Policy *altogether*, 23-Plt.Exs-5901; 1-Plt.Exs-133; 12-Plt.Exs-2892-96, and the CDE withdrew reference to Parental Exclusion Policies in its PRISM training for teachers. 3-Plt.Exs-462-69; 2-Plt.Exs-191-93.

In short, Defendants were perfectly willing to allow the disclosures at issue here for parents and teachers of at least over 14,000 EUSD students and 26,500 CVUSD students—many of whom presumably experience gender incongruency or dysphoria—without fear of any, let alone

significant, irreparable harm. Given Defendants' effective admission of no imminent irreparable harm to potentially thousands of students (or even one student) at the schools allowing for parental involvement, their about-face cry of imminent harm now—in the face of their own experts' testimony and undisputed evidence that Child Poe attempted suicide *under* Defendants' exclusion policies—reeks of posturing.

## CONCLUSION

The Court should deny Defendants' motion for a stay pending appeal.

Dated: December 30, 2025

Respectfully submitted,

*/s/ Paul M. Jonna*
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
William T. Duke
LiMANDRI & JONNA LLP
Post Office Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930

*/s/ Peter Breen*
Peter Breen
Michael McHale
Christopher J.F. Galiardo
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Telephone: (312) 782-1680

*Counsel for Plaintiffs-Appellees*

## STATEMENT OF RELATED CASES

As stated by Defendants-Appellants, there are two appeals presenting related matters currently pending before this Court. *See* Mot.13 n.4 (citing *City of Huntington Beach v. Newsom*, No. 25-3826 (argued Nov. 4, 2025); *Chino Valley Unified Sch. Dist. v. Newsom*, No. 25-3686 (briefing ongoing)). These cases are related because they "raise the same or closely related issues," 9th Cir. Rule 28-2.6(b), and those panels likely have priority over those related issues. *See* 9th Cir. Gen. Ord. 4.1(a); *Harvest Rock Church, Inc. v. Newsom*, 985 F.3d 771, 775 (9th Cir. 2021) (Christen, J., concurring).

## REQUEST FOR ORAL ARGUMENT

Defendants-Appellants' motion for a stay pending appeal is wholly inadequate and should be promptly denied. Otherwise, Plaintiffs-Appellees respectfully request the opportunity to provide oral argument on the motion. *See* 9th Cir. Gen. Ord. 6.3(g)(4).

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing document satisfies the type-volume requirements set out in Federal Rule of Appellate Procedure 27(d)(2) and Ninth Circuit Rule 32-3(2) as it contains 5,587 words, and was prepared using Microsoft Word in Century Schoolbook, 14-point font, a proportionally spaced typeface.

*/s/ Paul M. Jonna*
Paul M. Jonna

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system and by email to all counsel of record.

*/s/ Paul M. Jonna*
Paul M. Jonna