No. 25-8056

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELIZABETH MIRABELLI, *et al.*,
    *Plaintiffs-Appellees*,

v.

MARK OLSON, *et al.*,
    *Defendants-Appellants*.

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:23-cv-0768-BEN-VET
The Honorable Roger T. Benitez, Judge

**REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR A STAY PENDING APPEAL**

**<u>RELIEF REQUESTED BY JANUARY 5, 2026</u>**

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
HELEN H. HONG
  *Principal Deputy Solicitor General*
CHERYL L. FEINER
  *Senior Assistant Attorney General*
JOSHUA A. KLEIN
  *Supervising Deputy Solicitor General*

JULIE VEROFF
  *Deputy Solicitor General*
DARRELL W. SPENCE
  *Supervising Deputy Attorney General*
JENNIFER A. BUNSHOFT
KEVIN L. QUADE
  *Deputy Attorneys General*

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3776
Julie.Veroff@doj.ca.gov
  *Attorneys for State Defendants*

December 31, 2025

## TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................ 1

Argument ............................................................................................................ 2

Conclusion ....................................................................................................... 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Bacon v. Woodward*
104 F.4th 744 (9th Cir. 2024) ................................................................... 9

*Barbara v. Trump*
790 F. Supp. 3d 80 (D.N.H. 2025) ............................................................ 4

*Daniels v. City of Arlington*
246 F.3d 500 (5th Cir. 2001) ..................................................................... 8

*Doe No.1 v. Bethel Local Sch. Dist.*
2025 WL 2453836 (6th Cir. Aug. 26, 2025) ......................................... 5, 7

*Doe v. Horne*
115 F.4th 1083 (9th Cir. 2024) ................................................................. 6

*Doe v. San Diego Unified Sch. Dist.*
19 F.4th 1173 (9th Cir. 2021) ................................................................... 8

*Duncan v. Bonta*
83 F.4th 803 (9th Cir. 2023) (en banc) ..................................................... 6

*Foote v. Ludlow Sch. Comm.*
128 F.4th 336 (1st Cir. 2025) ................................................................ 5, 6

*Fulton v. City of Philadelphia*
593 U.S. 522 (2021) .................................................................................. 8

*J.D. v. Azar*
925 F.3d 1291 (D.C. Cir. 2019) ................................................................ 4

*John and Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*
78 F.4th 622 (4th Cir. 2023) ..................................................................... 2

*Mahmoud v. Taylor*
606 U.S. 522 (2025) .............................................................................. 5, 7

# TABLE OF AUTHORITIES
## (continued)

Page

*New York v. Ferber*
   458 U.S. 747 (1982) ................................................................................ 9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
   31 F.4th 651 (9th Cir. 2022) (en banc) ............................................ 2, 3, 4

*Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*
   95 F.4th 501 (7th Cir. 2024) ................................................................... 2

*Regino v. Staley*
   133 F.4th 951 (9th Cir. 2025) .................................................................. 4

*Roberts v. U.S. Jaycees*
   468 U.S. 609 (1984) ................................................................................ 9

*Tandon v. Newsom*
   593 U.S. 61 (2021) .................................................................................. 8

*Tingley v. Ferguson*
   47 F.4th 1055 (9th Cir. 2022) .................................................................. 6

*Trump v. CASA, Inc.*
   606 U.S. 831 (2025) ............................................................................ 3, 4

*United States v. Anderson*
   46 F.4th 1000 (9th Cir. 2022) .................................................................. 5

*Vasquez Perdomo v. Noem*
   148 F.4th 656 (9th Cir. 2025) .................................................................. 4

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ................................................................................ 5

*Wisconsin v. Yoder*
   406 U.S. 205 (1972) ................................................................................ 7

## INTRODUCTION

The district court's sweeping injunction is procedurally and legally flawed on many grounds. And it threatens substantial irreparable harm to the State, whose duly enacted antidiscrimination and privacy protections would be blocked; to public-school employees, who would be forced to attempt compliance with the district court's vague injunction; and to vulnerable students, who would be outed as transgender or gender nonconforming to their parents before they are ready and, in some cases, subjected to discriminatory misgendering by teachers at school. The district court provided no exceptions to its categorical injunction, even for cases where compliance would risk student self-harm, abuse at home, or parental abandonment.

Plaintiffs offer no persuasive response. Their main contention is that the State has engaged in "brazen litigation posturing" that, in plaintiffs' view, undercuts the State's claims of irreparable harm. Opp. 1. But plaintiffs misunderstand what the State has said and done: Far from arguing that any challenge to any state law is moot, the State merely maintained that plaintiffs' claims against particular defendants were moot. And the State has not disavowed enforcement actions against two school districts in the ways plaintiffs assert. In one case, the State has simply promised not to take action against a district for its efforts to comply with the narrow preliminary injunction issued by the district court in this case in 2023.

1

In the other case, the State has promised nothing of the kind and could bring an enforcement action in the future if the district contravenes state law. A stay pending appeal is warranted.

## ARGUMENT

1. The district court's injunction violates Article III and defies fundamental limits on class relief. Plaintiffs do not dispute that the district court only assessed whether a handful of class members have standing. They also make no serious effort to dispute that most class members lack standing under *Parents Protecting Our Children, UA v. Eau Claire Area School District*, 95 F.4th 501 (7th Cir. 2024), and *John and Jane Parents 1 v. Montgomery County Board of Education*, 78 F.4th 622 (4th Cir. 2023). Instead, plaintiffs contend that the district court had authority to issue an injunction applicable to millions of class members because it held that eight named plaintiffs have standing. Opp. 15-16.

That is incorrect. If the unnamed class members sued separately, they would plainly need to satisfy Article III to be entitled to injunctive relief. Plaintiffs cannot evade that requirement through (an improper) class certification under Rule 23. A class action is simply "a claims-aggregating device"; it "'leaves the parties' legal rights and duties intact and the rules of decision unchanged,'" and "it does not affect the substance of the claims." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc) (quoting

2

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)). Plaintiffs' preferred approach would violate that rule. It would "affect the substance of the claims" by eliminating the need for millions of people to demonstrate standing.

Plaintiffs argue (Opp. 15-16) that *Olean* held otherwise. But in the footnote invoked by plaintiffs, the Court merely discussed how standing requirements apply when *certifying* a class, not the distinct question of whether plaintiffs can be entitled to final judicial relief. 31 F.4th at 682 n.32. The Court was addressing a narrow question "expressly held open" by the Supreme Court: "'whether every class member must demonstrate standing *before a court certifies a class*.'" *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 n.4 (2021) (emphasis added)). Class certification is sometimes appropriate when a class "potentially includes more than a de minimis number of uninjured class members" because proof at trial may be necessary to determine which class members suffered an injury. *Id.* at 669. *Olean*'s brief footnote on standing was also dictum because the Court separately made clear that "all class members [had] standing" in the case before it. *Id.* at 682.

To the extent the Court reads *Olean*'s footnote the same way that plaintiffs do, that footnote is no longer good law following *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). In *Olean*, the Court pointed to precedent applying the settled principle

3

that only one plaintiff needs standing to support each form of injunctive relief. 31 F.4th at 682 n.32 (citing, *e.g.*, *Horne v. Flores*, 557 U.S. 433, 446-447 (2009)); *see also J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019) (similar). Before *CASA*, one possible form of relief was a "universal" injunction: an injunction "broader than necessary to provide complete relief to each plaintiff with standing." 606 U.S. at 861. At least theoretically, then, only one plaintiff needed standing to support universal relief. After *CASA*, however, universal injunctions are no longer allowed. So injunctive relief is authorized only to the extent "necessary 'to provide complete relief' to each of the [plaintiffs] 'with standing to sue.'" *Vasquez Perdomo v. Noem*, 148 F.4th 656, 688 (9th Cir. 2025); *cf. Barbara v. Trump*, 790 F. Supp. 3d 80, 91 (D.N.H. 2025) (emphasizing that "all members of the certified class" suffered the "same" "cognizable injury").

Apart from posing Article III problems, the district court's sweeping injunction also impermissibly "affect[s] the substance of the claims," *Olean*, 31 F.4th at 663, in another way: it eliminates individualized elements of plaintiffs' constitutional claims. To grant relief to the millions of parents and teachers covered by the injunction, the district court necessarily had to hold that their constitutional rights were infringed *and* that the State had no justification that could satisfy strict scrutiny. *Regino v. Staley*, 133 F.4th 951, 960 (9th Cir. 2025). But in many respects it will not be possible to make that determination in the

4

abstract. *See* Mot. 14. For example, Plaintiffs' free exercise claims turn on case-specific showings that class members have sincerely held religious objections. Mot. 17-21. By resolving millions of claims all at once, the district court glossed over these individualized issues.

For much the same reason, the district court violated Rule 23's class-certification requirements. *See* Mot. 13-14. Plaintiffs fail to even address the argument. The only type of class certified by the district court was a "23(b)(2)" class, *see* A-171, a class for which "a single injunction or declaratory judgment would provide relief to each member," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Where individualized questions will arise in evaluating plaintiffs' entitlement to relief, certification under Rule 23(b)(2) is improper. *Id.*

2. On the merits of their constitutional claims, plaintiffs make no meaningful effort to distinguish *Foote v. Ludlow School Committee*, 128 F.4th 336 (1st Cir. 2025), and *Doe No.1 v. Bethel Local School District*, 2025 WL 2453836 (6th Cir. Aug. 26, 2025). *See* Mot. 15-17. Instead, plaintiffs ask the Court to split from its sister circuits and recognize an expansive new substantive due process right and free exercise requirements that go far beyond the terms of *Mahmoud v. Taylor*, 606 U.S. 522 (2025). But this Court endeavors to avoid creating circuit conflicts. *See, e.g.*, *United States v. Anderson*, 46 F.4th 1000, 1005 (9th Cir. 2022). At this preliminary stage, where the Court is making a predictive judgment about the

5

likelihood of success on appeal, it is at least likely that the Court will choose to follow the persuasive analysis of the First and Sixth Circuits. *Cf. Duncan v. Bonta*, 83 F.4th 803, 806 (9th Cir. 2023) (en banc).

As to the substantive due process reasoning in *Foote*, plaintiffs contend that it is unpersuasive and in tension with this Court's decision in *Doe v. Horne*, 115 F.4th 1083 (9th Cir. 2024). Opp. 19. But *Foote* convincingly explained why honoring a student's request to use a name and pronouns consistent with their gender identity is not medical treatment that could implicate any fundamental parental right. 128 F. 4th at 349-350. Medical treatment is what licensed healthcare professionals provide their patients, consistent with the regulated practice of medicine. *See Tingley v. Ferguson*, 47 F.4th 1055, 1082-1083 (9th Cir. 2022). *Doe v. Horne* is not to the contrary; it merely recognized that social transition is sometimes recommended by medical professionals to alleviate symptoms of gender dysphoria. 115 F.4th at 1107 n.13. Doctors also sometimes recommend physical exercise, but that does not mean teachers are providing medical treatment by offering P.E. classes or recess.

*Foote* also persuasively rejected plaintiffs' suggestion that parents have a substantive due process "right to information" in the school setting. Opp. 19. Courts have repeatedly held that the "mere nondisclosure of information" does not implicate or infringe a parental right. *Foote*, 128 F.4th at 354-355 (collecting

cases). And because the challenged laws do not implicate any substantive due process right in the first place, there is no need to consider the applicability of a presumption that parents act "in their child's best interest." Opp. 20-21.

With respect to the Sixth Circuit's free-exercise decision in *Doe*, 2025 WL 2453836, plaintiffs argue that it would make little sense to cabin *Mahmoud*'s free exercise framework to "'curricular requirements.'" Opp. 21. But the Sixth Circuit did not do so. It echoed *Mahmoud*'s determination that a burden on parents' free exercise rights triggers strict scrutiny only where it is "'of the [ ] same character as the burden in [*Wisconsin v. Yoder*, 406 U.S. 205 (1972)].'" *Doe*, 2025 WL 2453836, at *7 (quoting *Mahmoud*, 606 U.S. at 564). *Yoder* involved a law that "compelled Amish families to send their children to public or private schools," thereby "'substantially interfer[ing] with the religious development of the parents' children.'" *Id.* at *6-7. As *Doe* recognized, certain instructional policies have a coercive potential that threatens a comparable form of interference. *Id.* But where, as here, a challenged policy is "neither compulsory nor instructional," *id.* at *7, it does not impose the same type of burden. *See* Mot. 18-19. To hold otherwise would threaten to subject a wide range of educational laws and school policies to strict scrutiny. *See Doe*, 2025 WL 2453836, at *7 n.3.

Plaintiffs also offer no convincing defense of the teacher-plaintiffs' First Amendment claims. Opp. 22-23. They concede (Opp. 22) that the teachers' free

7

speech rights rise and fall with the parents' claims, discussed above. Both of the teachers' claims fail under *Pickering*. Mot. 19-20.[1] And evaluating the free exercise claims under *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021), they would not trigger strict scrutiny. *Contra* Opp. 23. Nothing in the challenged features of California law provides a "system of individualized exemptions" for teachers or other school employees. *Fulton*, 593 U.S. at 534. All teachers and employees, for example, are subject to the same standard for evaluating state-law constitutional privacy claims: whether a disclosure that burdens the student's reasonable expectation of privacy is justified by a compelling state interest. Mot. 7. The fact that the government would have a compelling interest in disclosing information to prevent self-harm or abuse, *see id.*, does not mean that California's privacy doctrine "lacks general applicability," *Fulton*, 593 U.S. at 534. Allowing disclosure in those limited circumstances serves the same "government interest that justifies" the provisions plaintiffs challenge, *Tandon v. Newsom*, 593 U.S. 61, 62 (2021)—safeguarding the gender-nonconforming child's health and welfare. *See also Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021).[2]

---

[1] Not just one (Opp. 22), but "[s]everal circuit courts have applied the *Pickering* test to public employee claims involving religious speech or the free exercise of religion." *Daniels v. City of Arlington*, 246 F.3d 500, 503 & n.12 (5th Cir. 2001).

[2] Plaintiffs (Opp. 23) misportray an interrogatory answer in which the State objected to plaintiffs' request to "[d]escribe as many circumstances as possible" that would qualify for the exception. 21-Plt.Exs.-5398.

8

And plaintiffs point to no exceptions that "undermine[]" that interest. *Bacon v. Woodward*, 104 F.4th 744, 752 (9th Cir. 2024).

Even if the Court were to conclude that plaintiffs' claims triggered strict scrutiny, the challenged laws would withstand that review. They advance compelling state interests in protecting the safety and well-being of transgender and gender nonconforming students, and in fostering a school environment in which they can thrive. *Cf. New York v. Ferber*, 458 U.S. 747, 756-757 (1982); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984). And they are narrowly tailored: They do not mandate non-disclosure in all cases or require school districts to adopt any particular non-disclosure policy. Mot. 5-7. Requiring "individualized judicial [fact] finding" on the risk of harm from parental disclosure (Opp. 20 (emphasis omitted)) is not a viable alternative; doing so would effectively out the student and chill students from expressing their identities at school.

3. The remaining equitable factors weigh heavily in favor of a stay. Mot. 21-24. Plaintiffs' principal response is that the State cannot claim it will be harmed because of certain litigation choices it made at earlier stages of the case. Opp. 25-26. Plaintiffs misunderstand the State's choices.

Plaintiffs assert that the State has been "willing to allow" forced disclosures in two school districts. Opp. 25. Not so. As to Escondido Unified School District, the Attorney General merely clarified that he would not bring an enforcement

9

action against the district "for any actions" taken to "compl[y] with" the preliminary injunction order, 1-Plt.Exs-133—which applied to only two teachers and, unlike the more recent injunction issued by the district court, did not compel disclosures or misgendering, 1-Plt.Exs-172-173. And the Attorney General has been clear in ongoing litigation that Chino Valley Unified School District's disclosure policy—if applied to require forced outing—is invalid under AB 1955, and has not disavowed an enforcement action. *See* Def. Mot. to Dismiss at 24-25, *Chino Valley Unified Sch. Dist. v. Newsom*, No. 24-cv-1491 (E.D. Cal. Oct. 7, 2024), ECF No. 22.

Plaintiffs also refer to a mootness argument advanced by the State in district court. Opp. 1, 25. But the State never intended to suggest that *any* challenge by plaintiffs to *any* state laws in this area would be moot. The State's argument was that plaintiffs' claims against the State Superintendent and Board of Education members were moot to the extent those claims focused on informal guidance posted on the Department of Education's website. D.Ct.Dkt. 195-1 at 4-6; D.Ct.Dkt. 256 at 4. After that guidance substantially changed in January 2025, the State argued that any challenge to the prior guidance was moot. D.Ct.Dkt. 299 at 2-3. But its mootness argument did not address challenges to the other sources of state law that the district court later enjoined. D.Ct.Dkt. 195-1 at 4-6; D.Ct.Dkt. 256 at 4. Nor did the State argue that plaintiffs' claims against the Attorney

10

General were moot. D.Ct.Dkt. 256 at 4. In any event, the State retracted its mootness argument before the district court, D.Ct.Dkt. 299 at 5, and does not advance any such argument here.

Conversely, plaintiffs' litigation choices undermine their opposition to the State's stay request. Plaintiffs cannot claim any need for immediate injunctive relief when they have failed to move expeditiously. After filing this action in April 2023, they waited until August 2024 to begin challenging aspects of state law. D.Ct.Dkts. 1, 137.[3] Plaintiffs then requested or agreed to multiple scheduling extensions, and eventually withdrew their fully briefed motion for a class-wide preliminary injunction and filed a new summary judgment motion. *E.g.*, D.Ct.Dkts. 176, 206, 219 at 2 n.1, 240. The district court ultimately did not hold a hearing on plaintiffs' summary judgment motion until November 2025. D.Ct.Dkt. 301.

Finally, plaintiffs ignore the significant harm to teachers and other school officials forced to decipher (or attempt to decipher) and comply with the district court's injunction. Mot. 22-24. The district court's injunction forces teachers to misgender students and out students to parents before they are ready—actions that

---

[3] Plaintiffs' original and first amended complaints expressly disclaimed any challenge to state law. D.Ct.Dkt. 1 at 53; D.Ct.Dkt. 80 at 54. Only in the second amended complaint did plaintiffs challenge aspects of state law. *See, e.g.*, A-4; A-8-9; A-121.

many teachers, for good reason, would consider discriminatory. And plaintiffs dismiss the harms children will suffer. Opp. 24-25. Relying on a distorted reading of the district court's opinion, plaintiffs suggest that the parties' experts "'do not meaningfully disagree'" about such harms. Opp. 24. But the district court did not adopt plaintiffs' extreme view that such harms do not exist; to the contrary, it discounted them as "less substantial and light" in comparison to parental interests. A-284. The "full evidentiary record" (Opp. 25) shows that both plaintiffs and the district court were wrong. The declarations and testimony of several experts substantiate the "devastating," "significant psychological, emotional, and sometimes even physical harm" caused by forced disclosure laws and policies. *E.g.*, D.Ct.Dkt. 256-2 at 11-13, 19-25 (Brady Decl. ¶¶ 20a-g, 56-89); D.Ct.Dkt. 256-3 at 10-11 (Tando Decl. ¶¶15a-*l*); D.Ct.Dkt 256-4 at 9-12 (Al-Shamma Decl. ¶¶ 35-41).

## CONCLUSION

The Court should grant a stay pending appeal.

Dated: December 31, 2025　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*s/Julie Veroff*

ROB BONTA
　*Attorney General of California*
SAMUEL T. HARBOURT
　*Solicitor General*
HELEN H. HONG
　*Principal Deputy Solicitor General*
CHERYL L. FEINER
　*Senior Assistant Attorney General*
JOSHUA A. KLEIN
　*Supervising Deputy Solicitor General*
JULIE VEROFF
　*Deputy Solicitor General*
DARRELL W. SPENCE
　*Supervising Deputy Attorney General*
JENNIFER A. BUNSHOFT
KEVIN L. QUADE
　*Deputy Attorneys General*

　*Attorneys for State Defendants*

13

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) and Local Rules 27-1(d) and 32-3 because it contains 2,793 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font.