No. 25-8056

# In the United States Court of Appeals for the Ninth Circuit

ELIZABETH MIRABELLI, an individual, on behalf
of herself and all others similarly situated; LORI
ANN WEST, an individual, on behalf of herself
and all others similarly situated, et al.,
Plaintiffs-Appellees,

v.

ROB BONTA, in his official capacity as
the Attorney General of California, et al.,
Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of California
Honorable Roger T. Benitez
(3:23-cv-768-BEN)

## PLAINTIFFS-APPELLEES' MOTION FOR
RECONSIDERATION EN BANC

CHARLES S. LIMANDRI
PAUL M. JONNA
JEFFREY M. TRISSELL
**LiMANDRI & JONNA LLP**
Post Office Box 9120
Rancho Santa Fe, CA 92067
(858) 759-9930
*pjonna@limandri.com*

PETER BREEN
MICHAEL MCHALE
CHRISTOPHER J.F. GALIARDO
**THOMAS MORE SOCIETY**
309 W. Washington St., Ste. 1250
Chicago, IL 60606
(312) 782-1680
*pbreen@thomasmoresociety.org*

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS

FRAP 40(b) STATEMENT & INTRODUCTION ...................................... 1

LEGAL STANDARDS ................................................................. 5

BACKGROUND & PROCEDURAL HISTORY ........................................ 6

ARGUMENT ......................................................................... 12

   I.    The Panel Decision Conflicts with this Court's
        Precedents on Class Certification and Injunctions ................... 12

   II.   The Panel Decision Conflicts with the Supreme
        Court's and this Court's Precedents on Parents' Free
        Exercise and Fundamental Parental Rights ............................ 15

   III.  The Panel Decision Raises Questions of Exceptional
        Importance. ................................................................. 17

   IV.  The Equitable Factors Counsel Against a Stay. ....................... 18

CONCLUSION ...................................................................... 20

CERTIFICATE OF COMPLIANCE ................................................ 21

CERTIFICATE OF SERVICE ...................................................... 22

## TABLE OF AUTHORITIES

*Cases:*

*Baird v. Bonta,*
    81 F.4th 1036 (9th Cir. 2023)........................................................18

*Bates v. United Parcel Serv., Inc.,*
    511 F.3d 974 (9th Cir. 2007) .................................................12, 13

*Carolina Youth Action Project v. Wilson,*
    60 F.4th 770 (4th Cir. 2023)........................................................12

*City of Huntington Beach v. Newsom,*
    No. 25-3826, 2025 WL 3169324 (9th Cir. Sept. 12, 2025) ...........17

*Davis v. Lab'y Corp. of Am. Holdings,*
    No. 22-55873, 2024 WL 489288 (9th Cir. Feb. 8, 2024) ..............12

*Doe v. Horne,*
    115 F.4th 1083 (9th Cir. 2024)................................................4, 15

*DZ Rsrv. v. Meta Platforms, Inc.,*
    96 F.4th 1223 (9th Cir. 2024)......................................................13

*Foote v. Ludlow Sch. Comm.,*
    128 F.4th 336 (1st Cir. 2025) ..................................................4, 15

*Hyland v. Navient Corp.,*
    48 F.4th 110 (2d Cir. 2022) ........................................................12

*J.D. v. Azar,*
    925 F.3d 1291 (D.C. Cir. 2019)...................................................13

*Kaltenbach v. Hilliard City Schs.,*
    No. 24-3336, 2025 WL 1147577 (6th Cir. Mar. 27, 2025)............18

*Lee v. Poudre Sch. Dist. R-1,*
    135 F.4th 924 (10th Cir. 2025) ...................................................18

*Mahmoud v. Taylor,*
    606 U.S. 522 (2025) ............................................. 3, 4, 14, 15, 16, 19

*Miller v. McDonald,*
    -- S. Ct. --, No. 25-133, 2025 WL 3506969 (2025) ..........................4

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022)................................................3, 12, 13

*Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.,*
    145 S. Ct. 14 (2024) .................................................................. 14, 17

*Pierce v. Soc'y of Sisters,*
    268 U.S. 510 (1925) ................................................................... 4, 16

*Regino v. Staley,*
    133 F.4th 951 (9th Cir. 2025) ........................................................ 16

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ....................................................................... 12

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ......................................................................... 3

*Wisconsin v. Yoder,*
    406 U.S. 205 (1972) ......................................................................... 4

## Rules:

Fed. R. App. P. 32(a)(4)-(6)....................................................................... 21

Fed. R. App. P. 40(b).................................................................................. 1

Fed. R. Civ. P. 23.................................................................................. 3, 14

Fed. R. Civ. P. 23(b)(2) ............................................................................ 13

## Statutes:

2024 Cal. Stats. ch. 95............................................................................. 10

## FRAP 40(b) STATEMENT & INTRODUCTION

California requires public schools to hide children's expressed transgender status at school from their own parents—and even to facilitate those children's "social transition" over their own parent's express objections—in flagrant violation of parents' longstanding constitutional rights.

The real-world effects are pernicious—and exigent. Plaintiffs John and Jane Poe were not told that their junior-high daughter was being treated as male at school for most of a year. Only after she attempted suicide did they learn the truth. Unable to afford private school, this devout Catholic family transferred her to another public school, expressly requesting notice of her gender expression and the use of her legal name and biological pronouns. That school refused, citing the State's policies. To this day, the Poes continue to be left in the dark regarding their daughter's gender presentation at school.

Teachers also face a direct collision of duty and conscience. Two Christian middle school teachers, Plaintiffs Elizabeth Mirabelli and Lori Ann West, were presented with a list of seven students transitioning genders, six of whose parents were unaware. *See* 5-Plt.Exs-1123-24 (list). Their school required them to use one set of names and pronouns in class and another when calling parents. Believing this constituted systematic deception, they sought relief in April 2023 and won a preliminary injunction in September 2023.

1

Because the problem stems from a single consistent statewide policy and practice (hereinafter the "Policy"), the above-referenced parents and four teachers brought a class action against California Department of Education ("CDE") officials and the Attorney General ("Defendants") to enjoin its enforcement as to those parents and teachers who "object" to the Policy's application *against them*. After full discovery and a searching review of the record, the district court held the Policy violates Plaintiffs' and class members' First and Fourteenth Amendment rights and entered a tailored multipart permanent injunction— including, at long last, for Mr. and Mrs. Poe, who were pleading for relief "now" and without "[a]ny further delay" as they seek to save their daughter's life. 5-Plt.Exs-1247.[1]

Yet, on Monday, a panel of this Court granted Defendants' motion for a stay of the injunction in its *entirety* on grounds that disregard *en banc* decisions of this Court and U.S. Supreme Court precedent. Specifically, despite the named Plaintiffs' undisputed standing, the panel stayed the entire injunction because some *absent class members* (which

---

[1] The permanent injunction forbids (1) misleading parents about their minor child's gender presentation at school; (2) using transgender names or pronouns when parents have objected; (3) requiring teachers to use transgender names and pronouns for children whose social transitions are concealed from their parents; and (4) interfering with teachers communicating with parents about their child's gender incongruity. The injunction further requires that (5) state training materials be updated to reflect that parents have a federal constitutional right to be informed of their child's gender incongruence. 1-Plt.Exs-9-10.

it incorrectly described as "every" public school parent and teacher in California) allegedly lack standing. Ord.6-7. The panel ignored this Court's recognition that "only one plaintiff need demonstrate standing" even "where a class sought injunctive or equitable relief." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (*en banc*). Regardless, the district court's class certification rightly found common injury under Rule 23—which is why this Court does not require absent class members to *separately demonstrate* Article III standing.

The panel also held the injunction allegedly violates Supreme Court admonitions against *nationwide* injunctions not tailored to "the specific harm alleged." Ord.7-8. But that ignores the Court's express approval of injunctive relief for *certified classes* suffering *common* injuries, *Trump v. CASA, Inc.*, 606 U.S. 831, 849-50 (2025), which the district court diligently and correctly found here. 1-Plt.Exs-74-92. Common injury is even more clearly present after *Mahmoud*. Indeed, the challenged Policy "substantially interfere[s] with [Parent Plaintiffs' and class members'] ability to direct the religious development of their children" at school. *Mahmoud v. Taylor*, 606 U.S. 522, 554 (2025) (cleaned up). That fundamental burden is the same for all religiously objecting parents.

The panel's merits analysis was no less flawed. For starters, it grievously misread *Mahmoud*. The panel applied an unpublished, divided Sixth Circuit opinion to cabin *Mahmoud*'s reach solely to

3

"coercive 'curricular requirements,'" in alleged contrast to "operational policies that involve no instruction." Ord.11. The panel ignored *Mahmoud*'s underlying requirement of strict scrutiny whenever (as here) "government policies" "substantially interfer[e] with the religious development of parents' children" at school. 606 U.S. at 546, 564-65. *Accord Wisconsin v. Yoder*, 406 U.S. 205, 211 (1972) (applying strict scrutiny where neither the "curriculum *or social environment*" of modern school were consistent with parent plaintiffs' religious beliefs) (emphasis added); *Miller v. McDonald*, -- S. Ct. --, No. 25-133, 2025 WL 3506969 (2025) (vacating in light of *Mahmoud* lower court judgments against Amish parents' challenge to New York student vaccine mandate).

The panel also wrongly believed Defendants made a "strong showing" they will prevail against the parents' substantive due process claim based on a novel First Circuit holding that facilitating a minor's "transition" at school is not "medical treatment" and thus not subject to parental control. Ord.9 (citing *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336 (1st Cir. 2025), *pet. for cert pending* (No. 25-77)). The panel flat-out ignored this Court's contrary conclusion that transition is medical treatment, in *Doe v. Horne*, 115 F.4th 1083, 1107 n.13 (9th Cir. 2024). Nor did the panel address at all parents' long-recognized fundamental right to direct their children's *education and upbringing*. *E.g.*, *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35 (1925).

4

This case also raises questions of exceptional importance. Challenges to similar policies at schools in other states are preoccupying Circuit and district courts nationwide, as well as the Supreme Court. And, as mentioned, the resulting harms to parents and students are irreparable and exigent. Here, the panel blithely stayed the injunction *even as to named Plaintiffs* because the challenged policy has an undefined "compelling need" exception. Ord.8, 11-12. The panel entirely disregarded Defendants' own guidance stating such a need will be "very rare." 9-Plt.Exs-2132. Indeed, schools are *still* refusing to allow Plaintiffs to further know about, and have a say in, their *own* children's efforts to socially transition at school, *even after one of them attempted suicide.*[2] This Court should reconsider the matter *en banc* and vacate the stay.

## LEGAL STANDARDS

To obtain a stay pending appeal, courts consider (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the party will be irreparably harmed without a stay; (3) the balance of harms in issuing a stay; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The last two factors merge where, as here, the government is the opposing party. *Id.* at 435.

---

[2] There are no exigent countervailing harms to the state. Indeed, Defendants previously insisted that all of Plaintiffs' challenges to the Policy were "moot" because the "FAQ guidance" reflecting that Policy was "unequivocally … no longer in effect," 4 Plts.Exs-764, before withdrawing their mootness argument only in November 2025.

## BACKGROUND & PROCEDURAL HISTORY

**A.** In 2016, the CDE published a new Legal Advisory and an accompanying FAQs page regarding the rights of transgender students, whose purpose was "to provide California school districts with updated guidance on the minimum requirements for compliance with California's prohibition on gender identity discrimination." 9-Plt.Exs-2124. The page also linked to model board policies and model administrative regulations. 9-Plt.Exs-2136. Concerning both the FAQs and the linked model policies, the Legal Advisory stated that "[i]t is recommended that these materials are reviewed … to ensure compliance with the educational equity and nondiscrimination requirements of" California law. 9-Plt.Exs-2125. The CDE's interpretation of California law is binding on school districts, who have "a ministerial duty under state law to comply with the CDE's corrective actions." 9-Plt.Exs-2143-50.

In the FAQs, the CDE stated that (1) "school districts should accept and respect a student's assertion of their gender identity where the student expresses that identity at school,"[3] (2) "schools **must** consult with a transgender student to determine who can or will be informed of the student's transgender status, if anyone, including the student's

---

[3] California prohibits discrimination based on "gender identity" in public schools, Cal. Educ. Code §220, with gender identity defined as "a person's identity based on the individual's stated gender identity … without regard to any contrary statement by … a family member." Cal. Code Regs. tit. 22, §83001(g)(2).

6

family"; (3) "schools are **required** to respect the limitations that a student places on the disclosure of their transgender status, **including not sharing that information with the student's parents**" except in the "very rare" situations where "**there is a specific and compelling 'need to know'**"; and (4) "[a] transgender student's right to privacy does not restrict a student's right to openly discuss and express their gender identity or to decide when or with whom to share private information." 9-Plt.Exs-2130-33 (emphasis added). The "compelling" interest exception comes from judicial interpretations of the Privacy Clause of the California Constitution. *Hill v. NCAA*, 7 Cal. 4th 1, 47 (1994); *Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 330 n.15 (Cal. 1997).

Relying on the CDE, Attorney General Bonta also posted a page on the California DOJ website stating that no school has the right to "out" a student without his or her permission, including to the students' "parents" absent a "very good reason." 10-Plt.Exs-2383-89, 2481-85.

**B.** Plaintiffs Elizabeth Mirabelli, Lori Ann West, Jane Boe, and Jane Roe are teachers from the Escondido Union School District ("EUSD"), a K-8 district in San Diego County that serves roughly 14,000-16,000 students. 1-Plt.Exs-52-55; 22-Plt.Exs-5518-21, 5540 (Complaint); 4-Plt.Exs-966-1051; 5-Plt.Exs-1053-1238 (declarations). They alleged that forced compliance with the policies violated their Free Exercise and Free Speech rights and sought relief under 42 U.S.C. §1983, pointing to the principle of subsidiarity. The Poe Family and the Doe Family, both

7

devoutly Catholic, later joined this lawsuit as Parent-Plaintiffs. 1-Plt.Exs-43-45, 101-02; *see* 5-Plt.Exs-1239-1313; 3-Plt.Exs-605-10 (declarations).

The Poe Family's daughter ("Child Poe") attended Clovis Unified School District ("CUSD") schools and began identifying as transgender upon entering seventh grade in Fall 2022. She socially transitioned for that entire academic year without her parents' knowledge or consent. In March 2023, her parents obtained counseling for her because they could tell she was unwell but did not know why. Only when Child Poe unsuccessfully attempted suicide six months later did doctors inform her parents about her ongoing gender transition at school.

After Child Poe was released from the hospital, her parents moved her to CUSD's online public school and then to Yosemite Valley Charter School ("YVCS")—another online school. But CDE's Parental Exclusion Policy dogged them at each step. Because the Poes cannot afford private school, they have repeatedly instructed YVCS that they do not consent to her transition. But YVCS has ignored their instructions.

The Doe Family's daughter ("Child Doe") attends Pasadena Unified School District ("PUSD") schools. She began identifying as a boy at school, without informing her parents, sometime during her fifth-grade year starting Fall 2020. Her transgender identity intensified when she started sixth grade. In September 2021, Child Doe informed her parents she was transgender. Her parents suggested that they should, as a

8

family, take time to think about and discuss her feelings before taking any action. As a result, they believed Child Doe's school was not actively socially transitioning her.

The next year, when their daughter was in seventh grade, Child Doe's parents discovered that her school had been socially transitioning her without their permission. They confronted the principal, who denied the transitioning was occurring at school even while admitting that, if it were, it would be kept secret pursuant to the CDE's Parental Exclusion Policy. Towards the end of seventh grade, Child Doe appeared to desist from the identity and informed her parents that she was not transgender. But then, near the end of eighth grade, her parents discovered she had re-transitioned at school. They moved her to a new school within PUSD because they cannot afford private schooling. Presently, they believe she has re-desisted but cannot know because PUSD continues to follow the CDE's Parental Exclusion Policies.

**C.** Plaintiffs Mirabelli and West filed this action on April 27, 2023, and promptly moved for a preliminary injunction. In September 2023, the district court held Mirabelli and West had standing to sue the CDE Defendants, granted a preliminary injunction, and denied the CDE Defendants' motion to dismiss. 1-Plt.Exs-138. Later, with other teachers (Jane Boe and Jane Roe) and parents (the Poe Family and the Doe Family) seeking to join the action, in June 2024, Plaintiffs moved to

9

amend the complaint to add plaintiffs, add Attorney General Bonta as a defendant, and convert the case into a class action. Dkt.118.

In the interim, to address Parental Notification Policies issued by a half-dozen school districts, California passed AB 1955, a new statute that prohibits school districts from adopting any policy that provides parents notice of their child's gender transition, and that prohibits school districts from requiring any individual teacher to do so—"unless otherwise required by state or federal law." 2024 Cal. Stats. ch. 95. In January 2025, the CDE Defendants removed their FAQs and replaced them with a new webpage tied to AB 1955. 9-Plt.Exs-2153-55. Because Defendants did not abandon the content of the FAQs or how they applied to Plaintiffs, the district court found the case not moot. 1-Plt.Exs-3-4, 17-18, 87-92.

**D.** At the end of extensive discovery, in July 2025 Plaintiffs filed renewed motions for class certification and for summary judgment and entry of a class-wide permanent injunction. 4-Plt.Exs-887-965. In the interim, the district court certified a modified class, 1-Plt.Exs-74-86, and severed and stayed the claims against EUSD. 1-Plt.Exs-63-66.

The class contained four administrative subclasses, based around the four substantive claims: (1) school employees who "object" to complying with the Parental Exclusion Policy; (2) employees who "submit a request for a religious exemption or opt-out" from complying with the same; (3) parents who "object" to the Parental Exclusion Policy's application "against them"; and (4) parents who "submit a request for a

10

religious exemption or opt-out" from the same. 1-Plt.Exs-85-86.

At the November hearing, Defendants conceded there was no genuine dispute of material fact. 1-Plt.Exs-20-21 (quoting 2-Plt.Exs-405). On December 22, the district court granted summary judgment and entered a classwide injunction. 1-Plt-Exs-7-62. The injunction contained four parts tailored to the practical manner in which the Plaintiffs had been harmed. The Defendants were enjoined from enforcing "(1) the Privacy Provision of the California Constitution, Cal. Const. art. I, §1; [or] (2) any other provision of California law," so as to: (a) permit a teacher to lie or mislead a parent about their child's gender presentation at school; (b) permit a teacher to socially transition a child over their parent's objection; (c) require a teacher to socially transition a child without their parent's knowledge; and (d) prevent a teacher from informing a parent about the child's social transition. 1-Plt.Exs-9. At base, the order simply and modestly (i) allows teachers to communicate truthfully with parents about what name and pronouns their child is using at school, and (ii) gives parents the ability to opt out of Parental Exclusion Policies.

That evening, Defendants moved for a stay pending appeal, which the district court denied on December 24. 1-Plt.Exs-2-3. That night, Defendants moved this Court for an emergency administrative stay and stay pending appeal. This Court granted an administrative stay on December 26. On January 5, 2026, it granted an emergency stay of the

11

injunction in its entirety pending appeal. Plaintiffs now move this Court for reconsideration *en banc*.[4]

## ARGUMENT

### I. The Panel Decision Conflicts with this Court's Precedents on Class Certification and Injunctions.

**A.** The panel first expressed "serious concerns" over the district court's alleged failure to find that absent class members have "standing," pointing to *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Ord.6-7. But this Court, sitting *en banc*, has held that even after *TransUnion*, "only one plaintiff need demonstrate standing to satisfy Article III standing" even "where a class sought injunctive or equitable relief." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (*en banc*). Although *Olean* was decided at the pre-certification stage, it expressly relied on a prior *en banc* decision of this Court *at the injunction stage*. *See id.* (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 984-88 (9th Cir. 2007) (*en banc*)); *accord Davis v. Lab'y Corp. of Am. Holdings*, No. 22-55873, 2024 WL 489288, *2 n.1 (9th Cir. Feb. 8, 2024); *Hyland v. Navient Corp.*, 48 F.4th 110, 118 n.1 (2d Cir. 2022); *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 778 (4th Cir. 2023). The panel simply ignored these precedents.

---

[4] Earlier today, Plaintiffs also filed in the U.S. Supreme Court an emergency application to vacate the stay.

The rule of *Olean* and *Bates* makes particular sense in a civil rights context like this one, since Rule 23(b)(2)'s "principal purpose" is to remediate "classwide deprivations of protected rights." *J.D. v. Azar*, 925 F.3d 1291, 1314 (D.C. Cir. 2019). It is fundamental in Rule 23(b)(2) class actions that "[a]ll the class members need not be aggrieved by or desire to challenge defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)." *Id.*

Further, *Olean* and *Bates* are the logical extension of the rule that "in cases seeking injunctive or declaratory relief, only one plaintiff need demonstrate standing to satisfy Article III." *Olean*, 31 F.4th at 682 n.32. Accordingly, this Court recently reaffirmed that, in a class action, "standing is satisfied if at least one named plaintiff meets the requirements." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024). Indeed, "[i]f even a *class representative*'s individual standing is immaterial as long as one representative has standing, an *absent class member*'s individual standing must be immaterial in that instance." *J.D.*, 925 F.3d at 1324. The panel should not have held otherwise absent contrary *en banc* precedent.

**B.** Regardless, as the district court found, all class members have materially identical Article III injury because Parental Exclusion Policies directly interfere with all class member parents' rights to direct their children's upbringing, education, and medical treatment, and with teachers' own constitutional rights. 1-Plt.Exs-79. As noted, this is

13

especially true for the religiously motivated parent class members after *Mahmoud*. There, the Supreme Court made unmistakably clear that withholding notice and opt-out opportunities cognizably burdens religious parents' Free Exercise where the challenged "government policies" "pose[] a very real threat of undermining the religious beliefs and practices that the parents wish to instill" in their children." 606 U.S. at 530, 546. But the challenged Policy here does exactly that, confirming standing.[5]

**C.** The panel also wrongly held the district court failed to undertake Rule 23's "rigorous analysis" by ensuring that the injunctive relief is tailored to "the specific harm alleged." Ord.7. But that conclusion is obvious question-begging. As noted, the district court's class certification properly found classwide common injuries for "objecting" parents and teachers. The injunction provides a remedy to that common harm by ensuring objecting parents will not be lied to or misled about their children's expressed gender identity at school. 1-Plt.Exs-9-10. It is difficult to imagine how that relief could be any more closely tailored to Plaintiffs' and the certified class members' common injuries.

---

[5] The panel cited out-of-circuit precedents finding that individual plaintiffs lack standing to challenge similar policies where the parents have not claimed their own children are expressing contrary gender identities at school. Ord.6-7. But those decisions are not only dubious, *see Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*, 145 S. Ct. 14, 14 (2024) (Alito, J., dissenting), but they also either pre-dated *Mahmoud* or did not involve free exercise claims at all. Ord.6-7.

14

## II. The Panel Decision Conflicts with the Supreme Court's and this Court's Precedents on Parents' Free Exercise and Fundamental Parental Rights.

**A.** As noted, the panel wrongly rejected the district court's application of *Mahmoud*. In addition to wrongly cabining *Mahmoud* to "curriculum" disputes, it also erroneously held *Mahmoud* has no application where "a *student* ... voluntar[ily]" expresses transgender status at school. Ord.11 (original emphasis). But, under *Mahmoud*, the question is whether government "burdens the religious exercise of *parents* [by] requir[ing] them to submit their children" to school actions "that pose[] a very real threat of undermining the religious beliefs and practices that the *parents* wish to instill." 606 U.S at 530 (emphasis added). The panel twisted *Mahmoud* into a decision about *student*, not parental, religious exercise.

Thus, contrary to the district court, 1-Plt.Exs-48-52, the panel wrongly failed to apply strict scrutiny—which California did not even attempt to satisfy in its motion.

**B.** The panel also wrongly rejected the district court's substantive due process analysis by relying solely on the First Circuit's decision in *Foote* (holding that facilitating a child's social transition is not "medical treatment") without even mentioning *this Court's* directly conflicting precedent in *Horne* (concluding the opposite). *See* Ord.9-10; *Horne*, 115 F.4th at 1107 n.13. Even assuming arguendo *Horne* doesn't apply, the record here contradicted this conclusion. Plaintiffs' experts explained how

15

social transition is a form of psychological treatment, *see* 6-Plt.Exs-1320, 1339-51, 1361-62; 6-Plt.Exs-1553-59, with one even performing a comprehensive review of Child Poe's therapy records to explain why her school's secret social transition of her was psychological treatment. 6-Plt.Exs-1557-65. California's experts agreed, opining that that "*[b]y itself*, social transition is psychologically beneficial and is a *medically recognized treatment* for gender dysphoria," 20-Plt.Exs-5183, 5185; *see* 20-Plt.Exs-4951-56, or that "while being transgender is not a pathological condition, like a disease, it will be important for you [the parent] to look at your child's being transgender as something concrete, *like a medical condition*." 17-Plt.Exs-4249-50, 4253-55; *see also* 17-Plt.Exs-4256-69.

More, the panel also ignored parents' fundamental right to "direct the *upbringing* and *education* of children under their control," *e.g.*, *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) (emphasis added), or follow this Court's considered instructions on how to determine whether that right is violated in this context. *Regino v. Staley*, 133 F.4th 951, 963 (9th Cir. 2025); *cf.* 1-Plt.Exs-22-26 (district court's summary judgment order carefully following *Regino*). Further, *Mahmoud* clarified that because of the significant constraints in sending children to private school or homeschool, the basic parental rights affirmed in *Pierce* would "be an empty promise" if they did not apply "in a public school setting." 606 U.S. at 547. But the panel here simply ignored these fundamental rights, and

its order should be stayed for this reason alone.[6]

## III. The Panel Decision Raises Questions of Exceptional Importance.

As stated in Plaintiffs' motion for class certification, there have been at least *eight* lawsuits challenging California's Policy, in both state and federal court. 16-Plt.Exs-3899-901. Of these, one has already reached this Court, after being dismissed for failure to state a claim, and was remanded in April 2025 with specific instructions on how to analyze the Substantive Due Process issues. *Regino*, 133 F.4th 951 (before Christen, Wardlaw, Bennett, JJ.). Another is pending before a separate panel, which denied a motion for an injunction pending appeal solely on traceability grounds, *City of Huntington Beach v. Newsom*, No. 25-3826, 2025 WL 3169324, *3 (9th Cir. Sept. 12, 2025) (before Collins, Lee, Koh, JJ.) (argued Nov. 4, 2025), effectively inviting the City to amend its complaint to challenge the same Policy the district court here enjoined as to Plaintiffs and absent class members. Yet a third is pending and is still in the midst of briefing. *Chino Valley Unified Sch. Dist. v. Newsom*, No. 25-3686 (appeal filed June 11, 2025).

This Court's experience is not unique. Courts across the country are dealing with challenges to policies like California's which "present[] a question of great and growing national importance." *Parents Protecting*

---

[6] The panel also stayed the Teacher-Plaintiffs' injunction given its stay of the injunction as to Parent-Plaintiffs. Because the panel *erroneously* stayed the Parent-Plaintiffs' relief, this Court should also reconsider and vacate its stay of the Teacher-Plaintiffs' injunction, too.

*Our Children, UA v. Eau Claire Area Sch. Dist.*, 145 S. Ct. 14, 14 (2024) (Alito, J., dissenting). Each tells a different story; all are tragic. *Kaltenbach v. Hilliard City Schs.*, No. 24-3336, 2025 WL 1147577, *2 (6th Cir. Mar. 27, 2025) (Thapar, J., concurring) (attempted suicide). As California's experts testified "kids need support and help if they're experiencing these mental health disparities," 1-Plt.Exs-35 (quoting 19-Plt.Exs-4920), but, unfortunately, California's Policy turns the presumption of parental fitness "on its head." *Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 937 (10th Cir. 2025) (McHugh, J., concurring). California's challenged policy is simple and clear. Its application here raises questions of exceptional importance.

## IV.   The Equitable Factors Counsel Against a Stay.

On irreparable harm, California "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023), as the foregoing analysis confirms, and protecting constitutional rights is always in the public interest. *Id.* at 1040. Further, on the fully developed record here, "[t]he defense experts do not meaningfully disagree" with Plaintiffs' experts. 1-Plt.Exs-34-37. Indeed, California's experts explained that "where a child is being referred to as a chosen gender in one environment, but not in a different setting, [it] can be 'harmful' in that it can 'increase dysphoria, [and] increase mental health risks.'" 1-Plt.Exs-36 (quoting 17-Plt.Exs-4207-08).

18

An injunction poses no actual or imminent harms to Defendants. Meanwhile, it allows parents to know about and have a say in their children's social transition at school. It bears reiterating that Child Poe attempted suicide only *after* the public school concealed her transgender status from her own parents for *almost a year*, pursuant to California's Policy. And the same Policy facilitated the social transition of Child Doe starting in *fifth grade* without her parents' knowledge, resulting in a complete "breakdown of trust between [their] family and the California school system," and corresponding "extreme anxiety and stress" for both parents. 5-Plt.Exs-1289.

The district court's carefully considered injunction, issued after full discovery and exhaustive expert testimony, merely restores "object[ing]" parents' presumptive religious and fundamental right to know about, and have a say in, their own children's expressed gender identity at school. In contrast, the panel's cursory emergency stay misread this Court's directly controlling *en banc* precedents and Supreme Court caselaw, including *Mahmoud*. It also arrogated to itself on a short fuse and minimal briefing an issue no panel of this Court has yet deigned to answer even after *full* briefing on the normal docket—i.e., the scope and limits of parental rights when public schools, at California's demand, conceal and lie to them about facilitating their children's social gender transition. That question should not be so quickly and erroneously decided on the emergency docket—particularly at the behest of

19

Defendants who were insisting Plaintiffs' claims were entirely "moot" just two months ago.

## CONCLUSION

This Court should grant reconsider the motion *en banc* and vacate the stay.

Dated: January 8, 2025      Respectfully submitted,

*/s/ Paul M. Jonna*        */s/ Peter Breen*

Charles S. LiMandri        Peter Breen
Paul M. Jonna        Michael McHale
Jeffrey M. Trissell        Christopher J.F. Galiardo
William T. Duke        THOMAS MORE SOCIETY
LiMANDRI & JONNA LLP        309 W. Washington St., Ste. 1250
Post Office Box 9120        Chicago, IL 60606
Rancho Santa Fe, CA 92067        Telephone: (312) 782-1680
Telephone: (858) 759-9930

*Counsel for Plaintiffs-Appellees*

20

## CERTIFICATE OF COMPLIANCE

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

**9th Cir. Case Number(s)** _____No. 25-8056_____

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing *en banc*/response to petition is *(select one)*:

[X] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** __4,197_____.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[ ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** _/s/ Paul M. Jonna_____ **Date** _____1/8/2026_____

*(use "*s/[typed name]*" to sign electronically-filed documents)*

21

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system and by email to all counsel of record.

*/s/ Paul M. Jonna*
Paul M. Jonna

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 5 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ELIZABETH MIRABELLI, an individual;
LORI ANN WEST, an individual; JANE
ROE, an individual, on behalf of herself and
all others similarly situated; JANE BOE, an
individual, on behalf of herself and all
others similarly situated; JOHN POE, an
individual, on behalf of himself and all
others similarly situated; JANE POE, an
individual on behalf of herself and all others
similarly situated; Dr JOHN DOE, an
individual, on behalf of himself and all
others similarly situated; Miss JANE DOE,
an individual, on behalf of herself and all
others similarly situated,

            Plaintiffs - Appellees,

   v.

ROB BONTA, in his official capacity as
Attorney General of California; TONY
THURMOND, in his official capacity as the
California State Superintendent of Public
Instruction; LINDA DARLING-
HAMMOND, in her official capacity as
President of the California State Board of
Education; CYNTHIA GLOVER WOODS,
in her official capacity as Vice President of
the California State Board of Education;
FRANCISCO ESCOBEDO, in his official
capacity as a member of the California State
Board of Education; BRENDA LEWIS, in
her official capacity as a member of the
California State Board of Education;
JAMES J. MCQUILLEN, in his official

No. 25-8056

D.C. No.
3:23-cv-00768-BEN-VET
Southern District of California,
San Diego

ORDER

capacity as a member of the California State Board of Education; SHARON OLKEN, in her official capacity as a member of the California State Board of Education; GABRIELA OROZCO-GONZALEZ, in her official capacity as a member of the California State Board of Education; KIM PATTILLO BROWNSON, in her official capacity as a member of the California State Board of Education; HAYDEE RODRIGUEZ, in her official capacity as a member of the California State Board of Education; ALISON YOSHIMOTO-TOWERY, in her official capacity as a member of the California State Board of Education; ANYA AYYAPPAN, in her official capacity as a member of the California State Board of Education,

Defendants - Appellants,

and

MARK OLSON, in his official capacity as President of the EUSD Board of Education, FRANK HUSTON, in his official capacity as Vice President of the EUSD Board of Education, JOAN GARDNER, in her official capacity as a member of the EUSD Board of Education, DOUG PAULSON, in his official capacity as a member of the EUSD Board of Education, ZESTY HARPER, in her official capacity as a member of the EUSD Board of Education, LUIS RANKINS-IBARRA, in his official capacity as Superintendent of EUSD, JOHN ALBERT, both in his personal capacity and in his official capacity as Assistant Superintendent of EUSD, TRENT SMITH, both in his personal capacity and in his

official capacity as Director of Integrated
Student Services for EUSD, TRACY
SCHMIDT, both in her personal capacity
and in her official capacity as Director of
Integrated Student Supports for EUSD,
STEVE WHITE, both in his personal
capacity and in his official capacity as
Principal of Rincon Middle School at
EUSD, NAOMI PORTER, in her official
capacity as a member of the California State
Board of Education, ESCONDIDO UNION
SCHOOL DISTRICT, a local educational
agency,

Defendants.

Before: Mary H. Murguia, Chief Judge, and Andrew D. Hurwitz and Salvador
Mendoza, Jr., Circuit Judges.

PER CURIAM:

Plaintiff-Appellees are four parents and four Escondido Union School

District ("EUSD") teachers who challenge a host of California state laws that

Plaintiffs refer to as "the State's Parental Exclusion Policies." According to

Plaintiffs, these challenged laws are described in the California Department of

Education's 2016 "Legal Advisory regarding application of California's

antidiscrimination statutes to transgender youth in schools" and its accompanying

FAQs. The challenged policies allegedly violate teachers' and parents'

constitutional rights by requiring teachers to hide a student's gender nonconformity

and social transition, including from the student's parents, unless the student

3                                                    25-8056

consents to disclosure of that information. Plaintiffs bring individual claims under Title VII of the Civil Rights Act and a class action through 42 U.S.C. § 1983, seeking injunctive and declaratory relief against California state officials ("State Appellants"), EUSD, and several EUSD officials.[1] Plaintiffs sought to certify a class action with four subclasses that share common questions premised on: (1) violation of teachers' First Amendment free speech rights; (2) violation of teachers' First Amendment free exercise rights; (3) violation of parents' Fourteenth Amendment substantive due process rights; and (4) violation of parents' First Amendment free exercise rights.

The district court certified the class of all California public school employees and parents of children attending public school who object to the challenged state laws under Rule 23(b)(2). On December 22, 2025, the district court granted permanent injunctive relief to all its members. The district court found that various California laws violate parents' substantive due process and free exercise rights to be informed "after a student says or dresses in a way that suggests a non-conforming gender identity." The district court also concluded that public school employees have free speech and free exercise rights to provide information about a student's gender expression to the student's parents.

---

[1] Plaintiffs' claims against EUSD and EUSD officials were severed and stayed by the district court. This appeal only concerns Plaintiffs' claims against the State Appellants.

4                                                                    25-8056

Based on these conclusions, the court entered an injunction that bars State Appellants from "implementing or enforcing" "the Privacy Provision of the California Constitution . . . [and] any other provision of California law" that would "permit or require any employee in the California state-wide education system [to] mislead[] [a] parent or guardian . . . about their child's gender presentation at school." The injunction prohibits State Appellants from "permit[ting] or requir[ing] any employee in the California state-wide education system to use a name or pronoun to refer to [a] child that [does] not match the child's legal name and natal pronouns, where a child's parent or legal guardian has communicated their objection to such use." The injunction directs the State to include a notice in educator training materials that: "Parents and guardians have a federal constitutional right to be informed if their public school student child expresses gender incongruence."

The State Appellants now move for an emergency stay of the district court's permanent injunction. For the reasons discussed herein, we grant the motion.

## LEGAL STANDARD

When deciding whether to grant a stay pending appeal, "a court considers four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

25-8056

other parties interested in the proceeding; and (4) where the public interest lies.'"

*Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (quoting *Hilton v. Braunskill*, 481

U.S. 770, 776 (1987)). "The first two factors . . . are the most critical." *Id.* at 434.

## I.

After considering the record at this preliminary stage, we conclude that the

State Appellants have shown that "there is a substantial case for relief on the

merits." *Simon v. City & Cnty. of S.F.*, 135 F.4th 784, 816 (9th Cir. 2025) (quoting

*Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012)).

## A.

First, we have serious concerns with the district court's class certification

and injunction that covers every parent of California's millions of public school

students and every public school employee in the state. Courts across the country,

including in our circuit, have routinely rejected similar claims by parents and

teachers due to lack of standing. *See, e.g.*, *City of Huntington Beach v. Newsom*,

790 F. Supp. 3d 812, 823–24 (C.D. Cal. 2025) (dismissing for lack of standing

parents' claim where parents did not allege that their own child's factual

circumstance implicated California Assembly Bill 1955's restriction on informing

parents of their children's decision to use a different name or pronouns); *Chino*

*Valley Unified Sch. Dist. v. Newsom*, No. 2:24-cv-01941-DJC-JDP, 2025 WL

1151004, at *5 (E.D. Cal. Apr. 17, 2025) (same); *Parents Protecting Our Children,*

*UA v. Eau Claire Area Sch. Dist., Wis.*, 95 F.4th 501, 504–06 (7th Cir. 2024)

(affirming dismissal for lack of standing a parental association's claim where the

complaint failed to allege that even one of the association's members experienced

an injury attributable to the challenged policies), *cert. denied*, 145 S. Ct. 14 (2024);

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 629–31

(4th Cir. 2023) (concluding parents lacked standing where parents did not allege

that their own children had gender support plans or were otherwise likely to

experience future harm from the challenged policies), *cert. denied*, 144 S. Ct. 2560

(2024). "Article III does not give federal courts the power to order relief to any

uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S.

413, 431 (2021) (internal quotations and citation omitted).

Further, the district court failed to undertake the "rigorous analysis" required

by Rule 23 before granting relief on a class-wide basis. *See Wal-Mart Stores, Inc.

v. Dukes*, 564 U.S. 338, 351 (2011). This weighs against the district court's

conclusion that Plaintiffs have satisfied the prerequisites of Rule 23 for class

certification. The wide scope of the district court's injunction violates the principle

that "[i]njunctive relief must be tailored to remedy the specific harm alleged." *See

Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2003); *see also

Trump v. CASA, Inc.*, 606 U.S. 831, 868 (2025) (Alito, J., concurring) ("[D]istrict

courts should not view [*CASA*] as an invitation to certify nationwide classes

without scrupulous adherence to the rigors of Rule 23. Otherwise, the universal injunction will return from the grave under the guise of 'nationwide class relief,' and [*CASA*] will be of little more than minor academic interest.").

## B.

Second, the district court's ruling reiterated that the State is "prohibiting public school teachers from informing parents of their child's gender identity" through its "parental exclusion" policies, yet the district court failed to clearly identify the set of policies it relied on to reach this conclusion. A preliminary review of the record shows that the State does not categorically forbid disclosure of information about students' gender identities to parents without student consent. [2] For example, guidance from the California Attorney General expressly states that schools can "allow disclosure where a student does not consent where there is a compelling need to do so to protect the student's wellbeing," and California Education Code § 49602 allows disclosure to avert a clear danger to the well-being of a child, Cal. Educ. Code § 49602. It is thus not clear from the district court's order which particular policies are problematic, and it is doubtful that all of those policies categorically forbid disclosure of information, again "suggesting that the injunctive relief ordered may have been broader than necessary," *see CASA*, 606

---

[2] The district court's injunction appears largely premised on the informal 2016 Legal Advisory and FAQ page posted on the California Department of Education's website, which has been removed.

U.S. at 861, and not "tailored to remedy the specific harm alleged," *see Winter*, 508 F.3d at 886.

## C.

Third, we are skeptical of the district court's decision on the merits, which primarily relies on substantive due process. The district court concluded that parents have the right to be informed when gender incongruence is observed and make the decision about whether future professional investigation or medical care is needed. But the Supreme Court has cautioned that we must be "reluctant to expand the concept of substantive due process," *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), to avoid usurping "authority that the Constitution entrusts to the people's elected representatives," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 239–40 (2022).

Our sister circuit recently analyzed a similar claim in *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336 (1st Cir. 2025), *pet. for cert. pending* (No. 25-77), and concluded that "using the [s]tudent's chosen name and pronouns—something people routinely do with one another, and which requires no special training, skill, medication, or technology" is not a form of medical treatment that gives rise to a substantive due process claim. *Id.* at 350. The district court distinguished this case from *Foote*, reasoning that *Foote* did not involve allegations of school officials misrepresenting the student's gender transition when asked by parents. But the

9                                                    25-8056

challenged policies here appear to be analogous to the policy at issue in *Foote*, which "provides that 'parents are not to be informed of their child's transgender status and gender-affirming social transition to a discordant gender identity unless the child, of any age, consents.'" *See Foote*, 128 F.4th at 352. We thus conclude that the State Appellants have made a strong showing that the district court likely erred in its substantive due process analysis.

### D.

Because the State has sufficiently shown a substantial case for relief on the merits based on the sweeping nature of the district court's injunction, the dubious class certification, and the weakness of Plaintiffs' substantive due process claim, we may grant the stay on those grounds alone and need not reach the remaining First Amendment claims. Nonetheless, we address those briefly.

First, the district court's analysis of the parents' free exercise claims relied on *Mahmoud v. Taylor*, 606 U.S. 522 (2025), to conclude that the challenged policies triggered strict scrutiny and failed under that test. In *Mahmoud*, the Supreme Court applied strict scrutiny where a school district subjected "young children" to "unmistakably normative" books that "explicitly contradict[ed] their parents' religious views" and encouraged teachers "to reprimand any children who disagree[d]" or "express[ed] a degree of religious confusion." 606 U.S. at 550, 555–56 & n.8. However, *Mahmoud* has been described as a narrow decision

10                                                    25-8056

focused on uniquely coercive "curricular requirements." *See Doe No.1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 23-3740, 2025 WL 2453836, at *7 n.3 (6th Cir. Aug. 26, 2025). As the Sixth Circuit explained, "[b]ecause *Mahmoud*'s reasoning principally relates to curricular requirements, we are thus unpersuaded that it stands for the broad proposition that strict scrutiny is automatically triggered when a school does not allow religious students to opt out of any school policy that interferes with their religious development, including general operational policies that involve no instruction." *Id.* Here, the challenged policies appear to apply only when a *student* makes the voluntary decision to share their gender nonconformity with the school. We thus disagree with the district court's cursory assertion that the challenged policies "impose a similar, if not greater, burden on free exercise" as the policies in *Mahmoud*. Accordingly, the district court improperly extended the reasoning of *Mahmoud* to the instant case.

Second, the district court's ruling on the subclass of public school teachers' free exercise claim is predicated on the challenged policies "requir[ing] teachers to withhold" information about a student's gender nonconformity "with the knowledge that the information will be impossible for the parents to obtain from the school." However, as explained above, the district court's premise—that these policies categorically forbid disclosure of information—is contradicted by the record.

Finally, as Plaintiffs concede, the teachers' free speech claim "rises and falls on parents' rights." Because State Appellants are likely to defeat the parents' constitutional claims, we need not address the merits of the free speech claims here.

## II.

Next, we consider three other factors in assessing a motion for a stay: "whether the applicant will be irreparably injured absent a stay"; "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and "where the public interest lies." *Nken*, 556 U.S. at 426 (quoting *Hilton*, 481 U.S. at 776).

The remaining equitable factors weigh in favor of a stay. Justice Alito warned of universal injunctions under the guise of class relief. *CASA*, 606 U.S. at 868 (Alito, J., concurring). Here, the injunction is sweeping, ambiguous, and based on a lax enforcement of class certification principles. It further relies on a faulty reading of the policies at issue.

In considering irreparable harm, "we acknowledge the harms involved in denying the duly elected branches the policies of their choice." *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 994 (9th Cir. 2025) (citing *CASA*, 606 U.S. at 860–61). At this stage, the government has demonstrated irreparable harm.

Because the policies at issue do not categorically forbid disclosure of

12                                                    25-8056

information about students' gender identities to parents without student consent, other parties in this action, including the Plaintiffs, will not be substantially injured from the issuance of a stay. Additionally, the public interest in protecting students and avoiding confusion among schoolteachers and administrators weighs in favor of a stay.

## CONCLUSION

For the reasons above, we **GRANT** the State Appellants' motion for a stay pending appeal.[3]

## EMERGENCY MOTION FOR STAY GRANTED.

---

[3] We deny as moot Plaintiffs' request for oral argument on the instant motion. Dkt. No. 11 at 35.