No. 25-8056

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————

ELIZABETH MIRABELLI, *et al.*,
*Plaintiffs-Appellees*,

v.

ROB BONTA, *et al.*,
*Defendants-Appellants*,

————————————

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:23-cv-0768-BEN-VET
The Honorable Roger T. Benitez, Judge

————————————

## RESPONSE TO MOTION FOR RECONSIDERATION EN BANC

————————————

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
HELEN H. HONG
  *Principal Deputy Solicitor General*
CHERYL L. FEINER
  *Senior Assistant Attorney General*
JOSHUA A. KLEIN
  *Supervising Deputy Solicitor General*

JULIE VEROFF
  *Deputy Solicitor General*
DARRELL W. SPENCE
  *Supervising Deputy Attorney General*
JENNIFER A. BUNSHOFT
KEVIN L. QUADE
  *Deputy Attorneys General*

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3776
Julie.Veroff@doj.ca.gov
  *Attorneys for Defendants-Appellants*

February 6, 2026

# TABLE OF CONTENTS

**Page**

Introduction ................................................................... 1

Statement ...................................................................... 2

    A.    Legal background ..................................................... 2

    B.    Procedural history .................................................... 5

Argument ...................................................................... 9

I.    The stay order is not in conflict with any decision from this Court or the Supreme Court ................................................ 9

II.    The underlying merits issues and equities do not warrant en banc reconsideration of the stay order ............................... 14

Conclusion .................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Doe v. Horne*
115 F.4th 1083 (9th Cir. 2024) ............................................... 12

*Doe v. San Diego Unified Sch. Dist.*
19 F.4th 1173 (9th Cir. 2021) ................................................ 15

*Foote v. Ludlow Sch. Comm.*
128 F.4th 336 (1st Cir. 2025) ........................................... 12, 13

*Hernandez v. Tanninen*
604 F.3d 1095 (9th Cir. 2010) ............................................... 17

*Hill v. Nat'l Collegiate Athletic Ass'n*
7 Cal. 4th 1 (1994) .......................................................... 2, 3

*Int'l Partners for Ethical Care Inc. v. Ferguson*
161 F.4th 604 (9th Cir. 2025) ................................................ 15

*Mahmoud v. Taylor*
606 U.S. 522 (2025) ...................................................... 13, 14

*Mann v. Cnty. of San Diego*
907 F.3d 1154 (9th Cir. 2018) ............................................... 13

*Maryland v. King*
567 U.S. 1301 (2012) ........................................................ 16

*Meyer v. Nebraska*
262 U.S. 390 (1923) ......................................................... 13

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*
31 F.4th 651 (9th Cir. 2022) ............................................ 10, 11

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*
  95 F.4th 501 (7th Cir. 2024) ................................................... 10

*Parham v. J. R.*
  442 U.S. 584 (1979) ................................................................ 13

*Phyllis P. v. Super. Ct.*
  183 Cal. App. 3d 1193 (1986) ................................................. 2

*Pierce v. Society of Sisters*
  268 U.S. 510 (1925) ................................................................ 13

*Regino v. Staley*
  133 F.4th 951 (9th Cir. 2025) ........................................... 13, 15

*Runyon v. McCrary*
  427 U.S. 160 (1976) ................................................................ 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*
  559 U.S. 393 (2010) ................................................................ 10

*Tingley v. Ferguson*
  47 F.4th 1055 (9th Cir. 2022) ................................................. 12

*TransUnion LLC v. Ramirez*
  594 U.S. 413 (2021) ................................................................ 10

*Trump v. CASA, Inc.*
  606 U.S. 831 (2025) ................................................................ 11

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) ................................................................ 11

# TABLE OF AUTHORITIES
**(continued)**

Page

**STATUTES AND REGULATIONS**

20 U.S.C. § 1232g(a)(1)(A) ................................................................. 4

34 C.F.R. § 99.10 ................................................................................. 4

2024 Cal. Stat., Ch. 95 ........................................................................ 4

Cal. Educ. Code
  § 217 .................................................................................................. 4
  § 33308.5(a) ...................................................................................... 4
  § 51101(a)(1) .................................................................................... 4
  § 51101(a)(10) .................................................................................. 4

**STATE CONSTITUTIONAL PROVISIONS**

Cal. Const. art. I
  § 1 ...................................................................................................... 2
  § 7 ...................................................................................................... 3

**OTHER AUTHORITIES**

Cal. Dep't of Justice, *Legal Alert: Forced Disclosure Policies*
  (Jan. 11, 2024), https://tinyurl.com/5ahvubyz ............................... 2, 3

Fed. R. App. P. 40(b)(2) ..................................................................... 9

iv

# INTRODUCTION

The district court entered a permanent injunction of breathtaking scope: it applies to *all* of the millions of parents with children in California public schools and *all* of California's hundreds of thousands of public-school employees, and prevents the enforcement of an indeterminate number of state laws. The injunction appears to categorically bar public schools from *ever* respecting a transgender student's desire for privacy about their gender identity or their request to be addressed by a particular name or pronouns over a parent's objection. It contains no exceptions, even in extreme cases where students will suffer abuse or self-harm.

A panel of this Court entered a stay to prevent widespread confusion, harm to vulnerable students, and a massive change to the status quo while defendants pursue their appellate arguments. The panel explained that the injunction is "sweeping" and "ambiguous," Panel Stay Order 12 (Order); "serious[ly] concern[ing]" as to Article III, *id.* at 6; "based on a lax enforcement of class certification principles," *id.* at 12; "reli[ant] on a faulty reading of" the challenged state laws, *id.*; likely wrong on the merits, *id.* at 9-12; and harmful to the State, students, and school employees, *id.* at 12-13.

Plaintiffs' request for en banc reconsideration of that unpublished stay order should be denied. The order does not create a conflict with any decision of this Court or the Supreme Court. Nor is there any other persuasive basis for en banc

review.  The panel acted reasonably, and equitably, in maintaining the status quo while this Court considers full briefing and argument.

## STATEMENT

### A.  Legal Background

California law contains several provisions that may be relevant when a transgender student asks public-school employees not to disclose information about their gender identity to their parents.  Collectively, they allow disclosure in some circumstances and limit disclosure in others.  *See, e.g.*, Dkt. 7 at 4-8.  And if a school has reason to believe that a student's health would be in serious jeopardy absent disclosure, the school has a duty to report information to parents.  *See generally Phyllis P. v. Super. Ct.*, 183 Cal. App. 3d 1193, 1196 (1986).

One relevant doctrine is the California Constitution's Privacy Clause, Cal. Const. art. I, § 1, which confers rights that go beyond the protections of federal law.[1]  Individuals have a constitutionally protected privacy interest in sensitive, personal information that is "'fundamental to personal autonomy.'"  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 34 (1994).  In the Attorney General's view, information about a student's gender identity qualifies under this standard.  *Legal*

---

[1] In 2024, the California Attorney General released guidance on legal issues relevant to gender identity and expression in schools.  That document—referred to in this brief as the "Legal Alert"— reflects that office's views on the scope of state law in this area.  *See* Cal. Dep't of Justice, *Legal Alert: Forced Disclosure Policies*, OAG-2024-02 (Jan. 11, 2024), https://tinyurl.com/5ahvubyz.

*Alert* 3-4.  But burdens on a protected privacy interest do not automatically violate the Privacy Clause.  *Id.* at 4.  The permissibility of a burden depends on whether the *particular person* has a "reasonable expectation of privacy" in the particular information at issue, and whether the *particular burden* is justified in light of a compelling government interest and the absence of a less restrictive alternative.  *Id.*

Under the state Equal Protection Clause, Cal. Const. art. I, § 7, discrimination based on gender identity qualifies as a form of sex discrimination that triggers strict scrutiny.  *See Legal Alert* 1-2.  The Attorney General's position is that forced disclosure policies—which require school employees to notify parents when a student identifies as transgender, but not when a student identifies as cisgender—constitute a form of facial sex discrimination.  *Id.*  In the Attorney General's view, those policies fail strict scrutiny because they cause serious harm to students and are not narrowly tailored to achieve non-discriminatory interests.  *See id.* at 2-4.  The state Equal Protection Clause does not, however, bar schools from adopting facially neutral policies—for example, that allow disclosure "when any student—cisgender or transgender—is exhibiting symptoms of depression or other significant mental health issues."  *Legal Alert* 2.  Nor does it bar schools from adopting policies specific to transgender students that would satisfy strict scrutiny, such as allowing disclosure to protect students' well-being.  *Id.*

3

Additional state laws bear on the disclosure of information about a student's gender identity. For example, state law allows parents to review their child's school records and observe their child's classroom. Cal. Educ. Code § 51101(a)(1), (10).[2] And a recently enacted statute, AB 1955, prohibits policies that *require* school employees to disclose the gender identity of students without their consent, unless the disclosure is required by state or federal law. 2024 Cal. Stat., ch. 95, §§ 5-6.[3] AB 1955 also instructed the California Department of Education to update its resources for schools in this area. Cal. Educ. Code § 217. The Department responded by replacing a previous version of nonbinding guidance—a Legal Advisory and Frequently Asked Questions page posted on its website in 2016—with updated nonbinding guidance that closely tracks AB 1955. *See* Order 8 n.2; D.Ct.Dkt. 236 1-2.[4]

---

[2] The federal Family Educational Rights and Privacy Act similarly affords parents a right to request and receive their child's education records. *See, e.g.*, 20 U.S.C. § 1232g(a)(1)(A); 34 C.F.R. § 99.10. Nothing in state law purports to or could override that federal right.

[3] This Court is considering two challenges to AB 1955: *City of Huntington Beach v. Newsom*, No. 25-3826, and *Chino Valley Unified Sch. Dist. v. Newsom*, No. 25-3686.

[4] Although plaintiffs suggest that the guidance was "binding on school districts," Mot. 6, state law provides that "[p]rogram guidelines issued by [CDE] . . . shall not be prescriptive," Cal. Educ. Code § 33308.5(a).

### B. Procedural History

1.  This case began in April 2023, when two teachers sued officials of their school district, arguing that the district's policy on disclosure of students' gender identities violated the teachers' free speech and free exercise rights. D.Ct.Dkt. 1. Because the district "suggested" to those teachers "that [its] gender identity policies may be required by California . . . law," and pointed to the California Department of Education's 2016 online guidance, the teachers also sued members of the State Board of Education and the State Superintendent of Public Instruction. *Id.* at 10-12, 46. But the complaint expressly disclaimed any challenge to state law: "Mrs. Mirabelli and Mrs. West do not contend that any provision of California law—whether in the Education Code or the California Constitution— violates the U.S. Constitution." *Id.* at 53. The district court granted a preliminary injunction preventing defendants from enforcing the district's policy or the "policy described in the [Department's 2016] FAQs page" against the two teachers. D.Ct.Dkt. 42 at 35-36. No defendant appealed.

In August 2024, plaintiffs filed the operative second amended complaint, which added the Attorney General as a defendant and parents as plaintiffs, and sought to enjoin an indeterminate set of state laws that plaintiffs referred to as "Parental Exclusion Policies." D.Ct.Dkt. 133 at 4, 8-9, 81, 121. Invoking substantive due process, free exercise, and free speech protections under the

federal constitution, plaintiffs asserted that the challenged laws improperly withhold information from parents and restrict teachers' ability to communicate with parents in the ways that they prefer. *Id.* at 87-121.

2. In October 2025, the district court certified a class of all parents of children attending California public schools and all public-school employees who "object" to the "Parental Exclusion Policies." A-171-172.[5] On December 22, the district court granted summary judgment to plaintiffs. A-173-224. The opinion's primary focus was substantive due process. A-184-202. While recognizing "an absence of precedential rulings on the subject," A-187, the court concluded that a parent's "right to direct a child's education and . . . duty to provide for a child's health care," A-185, encompass a right to receive information about their child's "incongruous expression of gender," A-191. The court also held that the policies violate parents' free exercise rights and teachers' free speech and free exercise rights. A-202-222.

The district court entered a permanent injunction with multiple provisions. A-225-228. Among other things, it bars state officials from enforcing "the Privacy Provision of the California Constitution . . . [and] any other provision of California law, including equal protection provisions," as well as "any regulations or

---

[5]5 Citations to "A-XX-XX" refer to the Addendum to the State's emergency stay motion (Dkt. 7).

guidance," in ways that "permit or require any employee in the California state-wide education system [to] mislead[] [a] parent or guardian . . . about their child's gender presentation at school," including by "using a different set of preferred pronouns/names when speaking with the parents than is being used at school."  A-226-227.  The order also prohibits officials from "permit[ting] or requir[ing] any employee in the California state-wide education system to use a name or pronoun to refer to [a] child that [does] not match the child's legal name and natal pronouns, where a child's parent or legal guardian has communicated their objection to such use."  A-227.  And it prohibits enforcement of any state law or policy that either (i) "require[s] any [school] employee . . . to use a name or pronoun to refer to a child that [does] not match the child's legal name and pronouns" where the school employee has a "conscientious or religious objection" to doing so because the parent has not been notified; or (ii) "in any way interfere[s]" with a school employee's ability to inform a student's parents that the student "has manifested a form of gender incongruity."  A-227.  The injunction allows for no exceptions.  *See* A-226-228.

3.  Within hours of the ruling, defendants asked the district court for a stay pending appeal—or at least a 14-day administrative stay to allow a stay application to this Court.  D.Ct.Dkt. 309.  The district court denied those requests on December 24.  A-308.  Defendants that evening asked this Court for an interim

administrative stay and stay pending appeal.  Dkt. 7.  On December 26, a panel of this Court granted an administrative stay pending further order.  Dkt. 8.

On January 5, the panel issued an unpublished order staying the district court's order pending disposition of the appeal.  Dkt. 13.  The panel held that the State had shown "a substantial case for relief on the merits based on the sweeping nature of the district court's injunction, the dubious class certification, and the weakness" of plaintiffs' claims.  Order 10.  It expressed "serious concerns" that the district court had exceeded its power under Article III by ordering relief to persons without standing, *id.* at 6, and "failed to undertake the 'rigorous analysis' required by Rule 23," *id.* at 7.  The court also emphasized that the district court misunderstood the relevant state laws, which are not "categorical[]" as the district court believed, and that the injunction failed to clearly identify "which particular policies are problematic."  *Id.* at 8.  On the merits, the panel focused on the flaws in the district court's substantive due process analysis.  *Id.* at 9-10.  The panel also explained that it was unpersuaded, "at this preliminary stage," *id.* at 6, by the district court's "cursory" free exercise analysis.  *Id.* at 11.  And panel concluded that the equitable factors favored a stay.  *Id.* at 12-13.

4. On January 8, plaintiffs submitted an emergency application to the Supreme Court to vacate the panel's stay order.  *See Mirabelli v. Bonta*, No. 25A810.  That application remains pending.  Later the same day, plaintiffs asked

this Court to reconsider the panel's stay decision en banc. Dkt. 14 (Mot.). As to the underlying appeal, the clerk's office has set a briefing schedule that will allow the case to be fully briefed by the end of the school year. Dkt. 2.

## ARGUMENT

The district court's order would have imposed an immediate duty to take irreversible actions throughout the whole of California's public-school system, on a questionable procedural scaffold and novel substantive theories. The panel took the unremarkable step of staying the order pending appellate review, and plaintiffs provide no reason for this Court to take the unusual step of countermanding the panel's order en banc. The panel's unpublished order does not create any conflict with circuit or Supreme Court precedent, nor does it warrant en banc reconsideration for any other reason. *See* Fed. R. App. P. 40(b)(2). As the panel recognized, the State made a strong showing that it is likely to succeed on the merits and will be irreparably harmed without a stay, and that the equities favor a stay pending appeal.

## I. THE STAY ORDER IS NOT IN CONFLICT WITH ANY DECISION FROM THIS COURT OR THE SUPREME COURT

1. The panel began with justiciability. It noted that the district court's injunction "covers every parent of California's millions of public school students," even though "[c]ourts across the country, including in our circuit, have routinely rejected similar claims by parents . . . due to lack of standing." Order 6; *see, e.g.*,

9

*Parents Protecting Our Children, UA v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 503-506 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 14 (2024). The panel recognized that "'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" Order 7 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 421 (2021)). And Rule 23 does not override standing requirements for relief. A class action is a claims-aggregating device: it "merely enables a federal court to adjudicate claims of multiple parties at once" and "leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality opinion of Scalia, J.).[6]

Plaintiffs criticize the panel for not addressing a brief footnote in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (en banc). *See* Mot. 12. But as plaintiffs acknowledge, *id.*, that footnote concerned how standing requirements apply when *certifying* a class, not the distinct question of whether final judicial relief can be extended to those without standing, *see* 31 F.4th at 682 n.32. The footnote was also dictum because

---

[6] Plaintiffs assert that the class certification order found that "all class members have materially identical Article III injury." Mot. 13 (citing A-165). But the cited portion of the order says nothing of the kind—and certainly provides no sensible basis for concluding that all (or even most) of the millions of parents and teachers covered by the class have demonstrated all elements of standing. As to the named plaintiffs, plaintiffs' assertion that their standing is "undisputed" is untrue. *Compare* Mot. 2, *with* D.Ct.Dkt. 256 at 5-8 (raising standing objections).

"all class members [had] standing" in the case. *Id.* at 682. And none of the other cases invoked by plaintiffs (at Mot. 12) addressed the issue here: whether, following the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), a district court can grant relief to *millions* of people based on a finding that just *one or a handful* of named plaintiffs have standing. *CASA* made clear that injunctive relief is allowed only to the extent "necessary to provide complete relief *to each plaintiff with standing to sue*." *Id.* at 861 (emphasis added). At a minimum, en banc review at this stage would be premature, before the three-judge panel has an opportunity to fully evaluate how *CASA* bears on the scope of relief in the context of class-wide injunctions. *See* Order 12 ("Justice Alito warned of universal injunctions under the guise of class relief.") (citing *CASA*, 606 U.S. at 868 (Alito, J., concurring)).

The panel's provisional assessment of "class certification principles" (Order 12) likewise comports with precedent. The basis for the class-certification order—Rule 23(b)(2)—requires a showing that *each* class member's claims for injunctive relief can be resolved on an undifferentiated basis "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see id.* at 360-361. The district court made no meaningful attempt to satisfy that bar. For relief to be justified for the millions of people covered by the injunction, the district court would necessarily have had to conclude that strict scrutiny applied and that schools'

withholding of information and use of a child's preferred name or pronouns could never satisfy strict scrutiny. But that determination requires more individualized consideration than the district court's categorical order reflects. For example, if the challenged laws implicate parental rights, *but see infra* pp. 12-14, it would be necessary to consider a range of circumstances in assessing when, if ever, those rights are unjustifiably infringed—including the student's age and whether disclosure would severely harm the child.

2. On the merits, the panel first concluded that the State "made a strong showing that the district court likely erred in its substantive due process analysis," which was the "primar[y]" basis for its decision. Order 9-10. Plaintiffs contend that the panel's order, as well as the First Circuit decision it invoked, *Foote v. Ludlow School Committee*, 128 F.4th 336 (1st Cir. 2025), *pet. for cert. pending* (No. 25-77), are at odds with this Court's decision in *Doe v. Horne*, 115 F.4th 1083 (9th Cir. 2024). *See* Mot. 4, 15. Not so. In *Doe*, this Court simply recognized that social transition is sometimes recommended by medical professionals to alleviate symptoms of gender dysphoria. 115 F.4th at 1107 n.13. *Doe* did not hold or imply that mere use of a transgender person's chosen name and pronouns is itself medical treatment. Medical treatment is what licensed healthcare professionals provide their patients, consistent with the regulated practice of medicine. *See Tingley v. Ferguson*, 47 F.4th 1055, 1082-1083 (9th Cir. 2022). Decisions recognizing an

infringement of the parental right to direct a child's medical treatment accordingly have concerned medical procedures, examinations, or hospitalization. *See, e.g.*, *Parham v. J. R.*, 442 U.S. 584, 603 (1979); *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1160-1161 (9th Cir. 2018). Using a transgender student's chosen name and pronouns involves nothing of the kind.

Plaintiffs also argue that the challenged laws infringe their rights under *Meyer v. Nebraska*, 262 U.S. 390 (1923), and *Pierce v. Society of Sisters*, 268 U.S. 510 (1925). *See* Mot. 16-17. But those cases do not support plaintiffs' requested relief. "*Meyer* and its progeny" afford parents the right "to send their children to a particular private school rather than a public school," and "no more." *Runyon v. McCrary*, 427 U.S. 160, 177 (1976); *see Regino v. Staley*, 133 F.4th 951, 966 (9th Cir. 2025) (substantive due process does not afford parents a right "to choose . . . what takes place inside the school" or "to direct school administration more generally"); *Foote*, 128 F.4th at 354 (1st Cir. 2025) ("mere nondisclosure of information" does not infringe parental substantive due process right).

3. The panel's preliminary, unpublished assessment of the parent plaintiffs' free exercise claims, *see* Order 10-11, likewise does not warrant reconsideration. The panel understandably "disagree[d] with the district court's cursory assertion that the challenged policies 'impose a similar, if not greater, burden on free exercise' as the policies in *Mahmoud* [*v. Taylor*, 606 U.S. 522 (2025)]." Order 11.

In *Mahmoud*, a school district subjected "very young children" to "unmistakably normative" books, 606 U.S. at 550, which "impose[d] upon children a set of values and beliefs," *id.* at 554, that "explicitly contradict[ed] their parents' religious views," *id.* at 555. The school encouraged teachers "to reprimand any children who disagree[d]," *id.* at 556, or "express[ed] a degree of religious confusion," *id.* at 555. The Supreme Court stressed "the potentially coercive nature of classroom instruction of this kind." *Id.* at 554; *see id.* (books exerted "psychological 'pressure to conform'").

This case features nothing similar, and in questioning the district court's extension of *Mahmoud* to this case, the panel did not "cabin *Mahmoud* to 'curriculum' disputes." Mot. 15. Instead, it reasoned that strict scrutiny is not warranted here because "the challenged policies appear to apply only when a *student* makes the voluntary decision to share their gender nonconformity with the school." Order 11.[7]

## II. THE UNDERLYING MERITS ISSUES AND EQUITIES DO NOT WARRANT EN BANC RECONSIDERATION OF THE STAY ORDER

Having failed to demonstrate any conflict, plaintiffs briefly contend that the underlying merits issues, as well as the panel's balancing of the equities, implicate questions of exceptional importance. Mot. 17-20. Plaintiffs point to other pending

---

[7] Plaintiffs' motion does not make any argument specific to the teachers' claims. *See* Mot. 17 n.6.

cases involving similar constitutional claims. *Id.* at 17. But this Court has twice denied en banc review of *published merits decisions* implicating related parental rights claims. *See Regino v. Staley*, No. 23-16031, Dkt. 126; *Int'l Partners for Ethical Care Inc. v. Ferguson*, 161 F.4th 604 (9th Cir. 2025). It certainly should not take up these issues en banc in the context of an unpublished ruling on a stay motion, where the inquiry at hand—"'predicting the likelihood of success of the appeal'"—is a "'step removed from the underlying merits.'" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 n.4 (9th Cir. 2021). If anything, the active percolation on the merits issues in other pending cases, *see* Mot. 17, counsels *in favor* of the judicial modesty reflected in the panel's stay order, not the reinstatement of a sweeping statewide injunction.

The panel also rightly concluded that the equities support a stay. Order 12-13. In seeking reconsideration, plaintiffs fail to explain how the panel's case-specific balancing of the equities poses any issues that could plausibly warrant en banc review. Plaintiffs also fail to show any irreparable harm in light of the many ways that parents can still obtain information while the district court's injunction is stayed, *see* Order 12-13—including exercising their statutory rights to examine

school records and observe children's classrooms, *see supra* p. 4 & n.2, or simply asking their children to speak with them about issues related to gender identity.[8]

Whereas plaintiffs cannot demonstrate any need for immediate injunctive relief, the panel correctly understood that putting the injunction into immediate effect would cause harm that could not later be rectified even if the State prevailed on appeal. "'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).[9] Here, moreover, students face a significant threat of harm from the injunction's

---

[8] Plaintiffs suggest that, even if the injunction were stayed as to some class members, it should not be stayed "as to [the] named [p]laintiffs." Mot. 5 (emphasis omitted). They did not make that argument to the panel. *See* Dkt. 11. And there would be no basis for such relief in any event: The State is likely to succeed in showing that *all* plaintiffs' claims fail on the merits. *See* Order 9-12; *supra* pp. 12-14. And plaintiffs' approach to this litigation—in particular, their decision to withdraw a request for a preliminary injunction, *see* D.Ct.Dkts. 219 at 2 n.1, 240; *see also* Dkt. 12 at 11—undermines their asserted need for relief during the limited time it will take the three-judge panel to resolve the appeal on the merits.

[9] Plaintiffs note that, at an earlier point of this litigation, the State Superintendent and Board of Education defendants argued that plaintiffs' challenge to the 2016 nonbinding guidance became moot when that guidance was superseded. Mot. 5 n.2, 20; *see* D.Ct.Dkts. 195-1 at 4-6, 256 at 4. But that argument (which was later withdrawn, *see* D.Ct.Dkt. 298) has no relevance to the harms the State would suffer from the injunction the district court eventually entered, which would enjoin the enforcement of "*any* . . . provisions of California law" and "*any* regulations or guidance" that would interfere with parental access to gender identity information. A-226-227 (emphasis added).

provisions requiring teachers to use the wrong names and pronouns for students who identify as transgender, and to disclose confidential information without students' consent. *Cf. Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) ("'an appeal after disclosure'" does not vindicate the "'irreparable harm a party likely will suffer if erroneously required to disclose privileged materials or communications'").

Plaintiffs are wrong in asserting that the parties' experts "'do not meaningfully disagree'" (Mot. 18) about the threat of harm to students posed by the district court's injunction. The testimony of several experts substantiates the "significant psychological, emotional, and sometimes even physical harm" that can result from revealing a young person's transgender status to their parents without their consent, and from addressing transgender students with names or pronouns that do not match their identity.[10] The panel's stay order also "avoid[s] confusion among schoolteachers and administrators." Order 13. As the State has detailed elsewhere, *see, e.g.*, Dkt. 7 at 22-23, the injunction's terms are ambiguous in several critical respects that will make it challenging—if not impossible—for state officials, teachers, and other public-school employees to administer the injunction

---

[10] D.Ct.Dkt. 256-2, Exh. 2 at 5; *see also id.* at 12-13, 17-27, 34-35; D.Ct.Dkts. 256-3, Exh. 2 at 16-21, 256-4 at 9-12.

in a consistent manner statewide. The panel's stay order reasonably prevents such confusion and other serious harms until full appellate review can take place.

## CONCLUSION

The motion for reconsideration en banc should be denied.

Dated: February 6, 2026

Respectfully submitted,

*s/Julie Veroff*

ROB BONTA
  *Attorney General of California*
SAMUEL T. HARBOURT
  *Solicitor General*
HELEN H. HONG
  *Principal Deputy Solicitor General*
CHERYL L. FEINER
  *Senior Assistant Attorney General*
JOSHUA A. KLEIN
  *Supervising Deputy Solicitor General*
JULIE VEROFF
  *Deputy Solicitor General*
DARRELL W. SPENCE
  *Supervising Deputy Attorney General*
JENNIFER A. BUNSHOFT
KEVIN L. QUADE
  *Deputy Attorneys General*

  *Attorneys for Defendants-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)** 25-8056

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[ X ] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,200.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[   ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Julie Veroff          **Date** 02/06/26
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                              *Rev. 12/01/24*