No. 25-8056

# In the United States Court of Appeals for the Ninth Circuit

ELIZABETH MIRABELLI, an individual, on behalf
of herself and all others similarly situated; LORI
ANN WEST, an individual, on behalf of herself
and all others similarly situated, et al.,
Plaintiffs-Appellees,

v.

ROB BONTA, in his official capacity as
the Attorney General of California, et al.,
Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of California
Honorable Roger T. Benitez
(3:23-cv-768-BEN)

## PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION TO MODIFY STAY ORDER

CHARLES S. LIMANDRI
PAUL M. JONNA
JEFFREY M. TRISSELL
**LiMANDRI & JONNA LLP**
Post Office Box 9120
Rancho Santa Fe, CA 92067
(858) 759-9930
*pjonna@limandri.com*

PETER BREEN
MICHAEL MCHALE
CHRISTOPHER J.F. GALIARDO
**THOMAS MORE SOCIETY**
309 W. Washington St., Ste. 1250
Chicago, IL 60606
(312) 782-1680
*pbreen@thomasmoresociety.org*

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

ARGUMENT .................................................................................... 3

I. The Operative Order Is the Supreme Court's, and This Court Lacks Jurisdiction to Modify It. ....................................... 3

II. The Supreme Court Has Definitively Rejected California's Argument that Parental Notification Threatens Children, which Is Now Law of the Case. .......................................... 6

    A. California Argued in the District Court That Parental Notification Threatens Children, and the District Court Rejected that Argument ........................................... 6

    B. California Reprised the Same Argument Before This Court. ................................................................... 8

    C. The Supreme Court Reversed This Court's Finding and Held That the Injunction Promotes Child Safety. ............... 9

    D. The Supreme Court Also Resolved the Dispute Over Whether Social Transitioning Implicates Parental Rights, Rejecting This Court's Contrary Holding. ............. 11

III. The Notice Requirement Is Fully Supported by the Parents' Claims and Tracks the Supreme Court's Holdings.................. 13

    A. The Supreme Court Vacated the Stay Without Excepting the Notice Requirement, which Is Sustained by the Parents' Claims Alone. ........................... 13

    B. Defendants' Reading of the Notice as a "See Something, Say Something" Mandate Is a Mischaracterization. ......... 15

    C. Defendants' Proposed Alternative Notice Is an Improper Attempt to Rewrite the Injunction. ................................... 16

IV. The Remaining Stay Factors Foreclose Relief. ......................... 17

CONCLUSION .............................................................................. 19

CERTIFICATE OF COMPLIANCE .................................................... 21

CERTIFICATE OF SERVICE ........................................................... 22

i

# TABLE OF AUTHORITIES

*Cases:*

*Briggs v. Pa. R.R. Co.*,
   334 U.S. 304 (1948) ............................................................ 4

*Brokaw v. Mercer County*,
   235 F.3d 1000 (7th Cir. 2000) ........................................... 8

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988) ............................................................ 4

*Doe v. Horne*,
   115 F.4th 1083 (9th Cir. 2024) ...................................... 11

*Eichman v. Fotomat Corp.*,
   880 F.2d 149 (9th Cir. 1989) ........................................... 4

*Foote v. Ludlow School Committee*,
   128 F.4th 336 (1st Cir. 2025) ........................................ 11

*In re Potts*,
   166 U.S. 263 (1897) ............................................................ 4

*In re Sanford Fork & Tool Co.*,
   160 U.S. 247 (1895) ............................................................ 4

*Lapin v. Shulton, Inc.*,
   333 F.2d 169, 172 (9th Cir. 1964) ................................... 6

*Mi Familia Vota v. Fontes*,
   111 F.4th 976 (9th Cir. 2024) .......................................... 5

*Mirabelli v. Bonta*,
   No. 25A810, 2026 WL 575049 (U.S. Mar. 2, 2026) ............... passim

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
   145 S. Ct. 2658 (2025) ...................................................... 5

*Parham v. J.R.*,
   442 U.S. 584 (1979) .......................................................... 12

*Pierce v. Soc'y of Sisters*,
   268 U.S. 510 (1925) .......................................................... 12

*Plaut v. Spendthrift Farm, Inc.*,
   514 U.S. 211 (1995) ............................................................ 6

*Troxel v. Granville,*
530 U.S. 57 (2000) ............................................................. 8

*Trump v. Boyle,*
145 S. Ct. 2653 (2025) .................................................... 17

*Washington v. United States Dep't of Educ.,*
161 F.4th 1136 (9th Cir. 2025) ....................................... 2

**Rules:**

Fed. R. Civ. P. 62(d) ...................................................... 6

Sup. Ct. R. 44 ................................................................. 5

**Other Authorities:**

CSBA, *Supreme Court Strengthens Parental Notification Rights
for Gender Transitions* (Mar. 2026) ............................... 19

## INTRODUCTION

The Supreme Court vacated this Court's stay of the permanent injunction "with respect to the parents." *Mirabelli v. Bonta*, No. 25A810, 2026 WL 575049 (U.S. Mar. 2, 2026) (per curiam). It did so without qualification. The Supreme Court held that parents who seek religious exemptions "are likely to succeed on the merits of their Free Exercise Clause claim," slip. op. at 4, and that "[t]he same is true for the subclass of parents who object to those policies on due process grounds." *Id.* at 5.

Justice Barrett, joined by the Chief Justice and Justice Kavanaugh, wrote to emphasize that "[o]ur resolution of the parents' likelihood of success on this claim is dictated by existing law." *Mirabelli*, slip. op. at 2 (Barrett, J., concurring). And those justices framed the question at bar as, "Are the parents entitled to the benefit of the judgment entered by the District Court while California tries to overturn that judgment on appeal? The Ninth Circuit—itself acting on an interim basis—said 'no.' We disagree." *Id.* at 3.

Now, "concerned" that the Supreme Court's own order is allegedly "inconsistent with the reasoning in the Supreme Court's opinion," Mot.1, California seeks to strip the parents of the full "benefit of the judgment." *Mirabelli*, slip. op. at 3 (Barrett, J., concurring). But California's Emergency Motion is directed to the wrong court. The operative order is the Supreme Court's March 2, 2026, order. This Court's January 5, 2026 order, C.A. Dkt.13, is no more as to the parents, and its March 3 order,

C.A. Dkt.19, is ministerial. Yes, this Court has authority to modify its own interlocutory orders, but that authority does not extend to orders that have been vacated by the Supreme Court. Only the issuing court may modify its own order, and Defendants' remedy thus lies with the Supreme Court, not here. And even if a slight modification that did not contravene the Supreme Court were appropriate, the proper venue for that motion would be the district court in the first instance.

In any event, the Supreme Court was not silent on the two modifications requested here. Thus, Defendants cannot possibly meet the four factors for a reinstated (partial) stay pending appeal. *See Washington v. United States Dep't of Educ.*, 161 F.4th 1136, 1139 (9th Cir. 2025). ***First***, Defendants seek to condition the parents' right to their permanent injunction on a vague precondition that it not apply "insofar as it would compel disclosure to parents who would engage in abuse." Mot.4. But the Supreme Court rejected Defendants' arguments on this point, agreeing with the District Court that "[t]he injunction also permits the State to shield children from unfit parents by enforcing child-abuse laws and removing children from parental custody in appropriate cases." *Mirabelli*, slip op. at 6.

California argued this point in the District Court, the Court of Appeals, and the Supreme Court, *and lost*. However, even if the High Court had been silent on this point, California does not attempt to explain how its new standardless "abuse" exception would apply; who would

2

decide the matter; and why the current legal protections against abuse are inadequate—protections that both the District Court and Supreme Court recognized as adequate. Indeed, a standardless test is exactly what California seeks, as an end-run around the Supreme Court, which is why they rejected the District Court's offer to clarify the injunction to include the above quote from the Supreme Court's opinion. *See* D.C. Dkt. 349, 351.

**Second**, California seeks to stay entirely or rewrite the notice requirement in Item 3 of the injunction—a provision which the Supreme Court specifically recognized as part of the injunction before it and chose not to disturb. *See Mirabelli*, slip op. at 3. California thus asks this Court not merely to ignore a Supreme Court holding, but to reverse the High Court on matters it specifically addressed. The Court should decline the invitation.

## ARGUMENT

### I. The Operative Order Is the Supreme Court's, and This Court Lacks Jurisdiction to Modify It.

California's motion suffers from a threshold jurisdictional defect that is dispositive. Defendants style their motion as a request to "modify" this Court's stay order. But as to the parents' claims, this Court's January 5 stay order no longer exists. The Supreme Court vacated it. What is now operative is the Supreme Court's March 2 order, which unconditionally restored the district court's permanent injunction "with respect to the

parents." *Mirabelli*, slip op. at 7. This Court's March 3 order, C.A. Dkt.19, was ministerial—it merely implemented the Supreme Court's vacatur.

The consequence is straightforward: because the operative order is the Supreme Court's, Defendants must seek relief from the Supreme Court:

> When a case has been once decided by this court on appeal, and remanded to the circuit court, whatever was before this court, and disposed of by its decree, is considered as finally settled. The circuit court is bound by the decree as the law of the case, and must carry it into execution, according to the mandate. That court cannot vary it, or examine it for any other purpose than execution, or give any other or further relief, or review it, even for apparent error, upon any matter decided on appeal, or intermeddle with it further than to settle so much as has been remanded.

*In re Potts*, 166 U.S. 263, 265 (1897) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).

The mandate rule is not merely a prudential doctrine; it is a jurisdictional limitation. A lower court that purports to modify a Supreme Court order acts without jurisdiction. Since "its earliest days this [Supreme] Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948). Further, the doctrine of law-of-the-case applies not only to express holdings but to "those issues decided by necessary implications." *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989); *accord Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). The Supreme Court

4

necessarily decided that the injunction, as written, adequately accounts for child safety. *Mirabelli*, slip op. at 6. That holding cannot be relitigated here.

Defendants' requested relief would do exactly what these cases forbid. They ask this Court to (1) partially re-stay an injunction that the Supreme Court un-stayed, and (2) rewrite the terms of the injunction that the Supreme Court specifically reviewed and left undisturbed. Whether styled as a "clarification" or a "modification," the practical effect is to alter a Supreme Court order, which this Court has no authority to do. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring). If Defendants wish to modify the scope of the Supreme Court's vacatur, the proper vehicle is a petition for rehearing under Supreme Court Rule 44—not a motion to a Court of Appeals.

Defendants cite *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024), for the proposition that this Court may modify its own stay order. Mot.2. That is true when the stay order in question is the court's own. But *Mi Familia Vota* involved a panel modifying its own prior interlocutory order on its own authority—not modifying an order to contradict a ruling of the Supreme Court. Here, the January 5 stay has been vacated by a higher court. There is no stay order of this Court's remaining as to the parents' claims. *Mi Familia Vota* is inapposite. Defendants' motion does not ask this Court to modify a Ninth Circuit

order; it asks this Court to modify a Supreme Court order. The proper forum for that request is the Supreme Court itself.

To be sure, as Defendants suggest in a footnote, the district court can modify its injunction under Federal Rule of Civil Procedure 62(d). Mot.5 n.2. But this only highlights the impropriety of Defendants asking this Court for relief in the first instance. *Cf. Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964) ("[F]or a nonissuing court to entertain an action for such relief would be seriously to interfere with, and substantially to usurp, the inherent power of the issuing court … to supervise its continuing decree by determining from time to time whether and how the decree should be supplemented, modified or discontinued in order properly to adapt it to new or changing circumstances."). And although the district court retains authority over its own orders, like this Court, the district court's authority to modify the injunction would itself be subject to the constraint that it not contravene the Supreme Court's holdings. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 227 (1995).

## II. The Supreme Court Has Definitively Rejected California's Argument that Parental Notification Threatens Children, which Is Now Law of the Case.

### A. California Argued in the District Court That Parental Notification Threatens Children, and the District Court Rejected that Argument

Throughout this litigation, California's central defense of its Parental Exclusion mandate has rested on the claim that disclosing a child's gender identity to the child's own parents places the child at risk

6

of abuse, rejection, or abandonment. In their opposition to summary judgment, Defendants argued that California's policies serve a "compelling interest in protecting transgender and gender-nonconforming students from bullying and harassment, and in fostering a safe and supportive school environment where students can learn without fear of being outed to their parents before they are ready." D.C. Dkt.247 at 39-40. In support, Defendants submitted declarations they characterized as "detailing emotional and education harms faced by transgender or gender-nonconforming youth rejected by family, including harassment, homelessness, and self-harm." *Id.* at 40. Defendants' argument was explicit: parents who learn of their child's gender identity will respond with rejection, abuse, or abandonment. And Defendants' counsel argued before the District Court that it is not "good for the student's mental health in every case to force the school district to tell the parents before the child is ready." D.C. Dkt.303 at 171.

The district court rejected this argument on multiple independent grounds. *First*, the court made an express factual finding: "Disagreement is not abuse, and the court so finds." D.C. Dkt.307 at 5. This finding was supported by the testimony of Plaintiffs' expert, Dr. Erica Anderson, who agreed that a parent's decision not to immediately affirm a child's gender identity does not mean the parent will abuse the child. *Id. Second*, the court found that existing child-protection mechanisms already address actual abuse: "For the isolated instances where a parent or caregiver

7

commits physical abuse on a child, there are mandatory reporting laws and a complete law enforcement and judicial system in place." *Id.* at 5-6 (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1019 (7th Cir. 2000)). *Third*, the evidentiary record showed the *opposite* of what Defendants claimed: children who socially transition without parental knowledge and involvement experience worse outcomes. Dr. Anderson testified that cases of social transition without parental knowledge "only come to my attention because there is a rupture and serious problems with the child." *Id.* at 5. *Fourth*, the district court held that Defendants had "no compelling interest in creating safe and inclusive campuses through deceiving parents about their children because 'there is a presumption that fit parents act in the best interests of their children.'" *Id.* at 46 n.14 (quoting *Troxel v. Granville*, 530 U.S. 57, 68 (2000)).

## B. California Reprised the Same Argument Before This Court.

California raised the identical argument in their emergency stay motion and reply brief to this Court. In their motion, Defendants-Appellants warned that "[o]uting transgender students to their parents before they are ready threatens mental and emotional anguish, depression, and in extreme cases, even suicide," and that the injunction would "gravely harm students." C.A. Dkt.7 at 2, 22-23. In their reply, Defendants-Appellants escalated: "The district court provided no exceptions to its categorical injunction, even for cases where compliance

would risk student self-harm, abuse at home, or parental abandonment." C.A. Dkt.12 at 1.

In its January 5, 2026 order granting a stay, this Court accepted Defendants' framing, at least in part. In the final substantive sentence of its equitable analysis, the panel held: "Additionally, the *public interest in protecting students* and avoiding confusion among schoolteachers and administrators weighs in favor of a stay." C.A. Dkt.13 at 13 (emphasis added).

### C. The Supreme Court Reversed This Court's Finding and Held That the Injunction Promotes Child Safety.

The Supreme Court's per curiam opinion addressed the risk-of-abuse argument and reached the opposite conclusion. The Supreme Court held that, "Everyone agrees that children's safety is the overriding equity. And the injunction here *promotes* child safety by guaranteeing fit parents a role in some of the most consequential decisions in their children's lives." *Mirabelli*, slip op. at 6 (emphasis added).

The High Court then directly addressed the injunction's treatment of abusive parents: "The injunction also permits the State to shield children from unfit parents by enforcing child-abuse laws and removing children from parental custody in appropriate cases." *Id*. The Court examined the injunction's terms, considered Defendants' argument before the Court that the injunction "allows for no exceptions," *see*

Respondents' Opp. at 11,[1] and found that existing child-protection mechanisms—mandatory reporting laws, dependency proceedings, removal authority—operate alongside the injunction. In so holding, the Court adopted the district court's factual findings and similar holding and rejected California's contrary public-interest argument.

Defendants' motion rests instead on a misreading of the Supreme Court's narrow-tailoring analysis. Defendants rely on the passage that "[t]he State's interest in safety could be served by a policy that allows religious exemptions while precluding gender-identity disclosure to parents who would engage in abuse." Mot.3-4 (quoting *Mirabelli*, slip op. at 5). But this passage is a critique of *California's policy*, not an invitation to modify the *injunction*. It explains why blanket non-disclosure fails strict scrutiny: because a less restrictive alternative exists that would still protect the narrow category of children facing genuinely abusive parents. The Court then examined the *injunction itself* at the equities stage and found it adequate—expressly holding that as written it "permits the State to shield children from unfit parents." Slip op. at 6. Defendants' motion presents the critique of California's policy as if it were the holding of the Supreme Court and entirely ignores the passage with the actual holding of the Court. The Supreme Court drew the line; Defendants would erase it.

---

[1] https://www.supremecourt.gov/DocketPDF/25/25A810/392334/20260121 141726616_Mirabelli%20v.%20Bonta%20-%20State%20Opposition.pdf.

### D. The Supreme Court Also Resolved the Dispute Over Whether Social Transitioning Implicates Parental Rights, Rejecting This Court's Contrary Holding.

A related argument that the Supreme Court resolved—and that bears on Defendants' present motion—concerns whether a child's social gender transition at school implicates parental rights at all. Defendants relied below on the First Circuit's decision in *Foote v. Ludlow School Committee*, 128 F.4th 336 (1st Cir. 2025), which held that using a student's preferred name and pronouns is not "medical treatment" triggering parental due process rights. *Id.* at 350. This Court adopted that framing. C.A. Dkt.13 at 9-10.

The district court had rejected *Foote* on the facts. D.C. Dkt.307 at 8-10. Plaintiffs' experts testified that social transition is a form of psychological treatment with significant mental health consequences, and the record documented concrete harms—including the attempted suicide of the Poe family's daughter—flowing from school-facilitated social transition without parental knowledge. *See* D.C. Dkt.307 at 4-5. Plaintiffs even argued that this Court's own precedent in *Doe v. Horne*, 115 F.4th 1083, 1107 n.13 (9th Cir. 2024)—which concluded that social transition constitutes medical treatment—should govern. *See* C.A. Dkt.14 at 13.

The Supreme Court resolved the dispute on broader grounds, accepting that gender incongruence raises important issues of mental health, and so not requiring Plaintiffs to necessarily prove that social

11

transition is "medical treatment." The Court held that "[g]ender dysphoria is a condition that has an important bearing on a child's mental health," and that "when a child exhibits symptoms of gender dysphoria at school, California's policies conceal that information from parents and facilitate a degree of gender transitioning during school hours." Slip op. at 5-6. The Court grounded parental rights not only in the right to participate in medical decisions, *see Parham v. J.R.*, 442 U.S. 584, 602 (1979), but in the broader right to "direct the upbringing and education of children." *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35 (1925). Justice Barrett confirmed this holding: "California's nondisclosure policy thus quite obviously excludes parents from highly important decisions about their child's mental health." *Mirabelli*, slip. op. at 2 (Barrett, J., concurring).

This holding undercuts Defendants' motion. On Monday, March 9, the parties appeared before the District Court on a motion for fees and costs. At the hearing, the parties discussed the present emergency motion and the District Court suggested modifying the injunction to moot the motion. The District Court offered to recite the Supreme Court's holding with the following addition: "5. This injunction is intended to promote child safety by guaranteeing fit parents a role in some of the most consequential decisions of their children's lives while permitting the State to shield children from unfit parents by enforcing child-abuse laws in cases of compelling need." But this was inadequate for Defendants,

whose counsel speculated that existing child abuse statutes might still lead to disclosure of a child's gender identity to her parents. *See* D.C. Dkt. 349, 351.

In any event, Defendants' request for an abuse carve-out rests on the implicit premise that the State retains broad authority to mediate the flow of gender-identity information between schools and parents. The Supreme Court has rejected that premise. Parents have a constitutional right to this information, subject only to the State's authority to protect children from genuinely unfit parents through existing child-abuse laws—authority the Court has already found the injunction preserves.

### III. The Notice Requirement Is Fully Supported by the Parents' Claims and Tracks the Supreme Court's Holdings.

#### A. The Supreme Court Vacated the Stay Without Excepting the Notice Requirement, which Is Sustained by the Parents' Claims Alone.

The Supreme Court specifically described the notice requirement in its recitation of the injunction's terms: the injunction "compels defendants to include in state-created or approved instructional materials a notice of the rights protected by the injunction." *Mirabelli*, slip op. at 3. The Court then vacated the stay "with respect to the parents" without qualification or exception. *Id.* at 7. Had the Court believed that Item 3's language exceeded the scope of its holdings, it would have said so. It did not.

Nevertheless, Defendants argue that the second sentence of the notice—"Teachers and school staff have a federal constitutional right to accurately inform the parent or guardian of their student when the student expresses gender incongruence"—"pertains to the rights of teachers and school staff" and should be stayed because the Supreme Court let stand this Court's stay of the teachers' claims. Mot.5.

This argument confuses the source of a right with its beneficiary. The parents' right to be informed necessarily implies that someone must do the informing. The injunction's operative provisions make this clear.

The second sentence of the notice is of the same character. It does not create an independent teacher right; it describes the corollary of the parents' right. If parents have a constitutional right to accurate information about their children's gender presentation at school, then school employees necessarily have a right not to be punished for providing that information. The notice says as much. Neither the district court nor the Supreme Court divided the notice requirement between parent claims and teacher claims. The Supreme Court described the notice and vacated the stay "with respect to the parents" without carving any portion out. And either way, Defendants did not specifically argue that the second sentence should be treated any differently than the first sentence.

14

### B.   Defendants' Reading of the Notice as a "See Something, Say Something" Mandate Is a Mischaracterization.

Defendants contend that the first sentence of the required notice—"Parents and guardians have a federal constitutional right to be informed if their public school student child expresses gender incongruence"—"could be understood to suggest that public school officials have an affirmative constitutional duty to inform parents whenever they observe a student's expression of 'gender incongruence,' effectively imposing a mandatory 'see something, say something' obligation in all circumstances." Mot.5. This is a strawman.

The notice itself does not impose operational obligations on school employees. It is a statement of constitutional rights to be included in training materials. It tells school employees what parents' rights *are*—not what school employees must *do* on any particular occasion. To be sure, the notice accurately declares parents' constitutional rights, but the operational provisions of the injunction—which tell school employees what they must and must not do to remedy the harms here—are in Items 1(a), 1(b), and 1(d), not Item 3. Item 1(a) prohibits misleading parents; Item 1(b) requires respecting parental objections to name and pronoun changes; and Item 1(d) prohibits schools from interfering with conversations between teachers and parents.

Defendants further argue that the Supreme Court limited relief to parents "who object to the challenged policies or seek religious

exemptions," and that the notice statement therefore overstates the scope of the right. Mot.5 (quoting *Mirabelli*, slip. op. at 6). But the passage Defendants quote is from the Supreme Court's standing and class-certification analysis—it defines the class of parents protected by the injunction, not the scope of the underlying constitutional right. The Court held that these parents' due process and free exercise rights are "likely" to succeed on the merits. *Mirabelli*, slip op. at 4-6. The first sentence of the notice simply states the right the Court recognized. That the right inures to the class of parents who object to the policies does not mean the notice is inaccurate—it means the notice correctly states the right that applies to the class.

### C. Defendants' Proposed Alternative Notice Is an Improper Attempt to Rewrite the Injunction.

Defendants propose that, if the Court declines to stay Item 3 entirely, it should substitute alternative notice language of Defendants' own drafting. Mot.5-7. The proposed language adds two limitations not found in the Supreme Court's opinion: (1) a qualifier that the right applies only to parents "who object to" policies, and (2) a statement that "school employees may 'preclud[e] gender-identity disclosure to parents who would engage in abuse.'" Mot.6.

This request is extraordinary. Defendants ask this Court, on an emergency motion without full briefing, to rewrite a provision of a permanent injunction entered after full discovery, summary judgment

16

briefing, and oral argument—*and reviewed by the Supreme Court*. This Court should decline the invitation.

As to substance, as stated above, Defendants' proposed language regarding distorts the Supreme Court's opinion. *See* §§ IIC, III.C, *infra*. Moreover, even if this Court were inclined to view modifications to the injunction as appropriate, the proper forum for any such modifications is the district court, which Defendants even acknowledge. Mot.5 n.2.

At bottom, Defendants' complaints about the notice language are merits arguments about the precise wording of the injunction. As Justice Barrett explained, the parents "must continue to litigate in the Ninth Circuit, and if necessary, this Court. But in the meantime, the injunction of California's policy … remains in place." *Mirabelli*, slip. op. at 3 (Barrett, J., concurring). The proper vehicle for any objection to the injunction's wording is the merits appeal, not an emergency motion to modify a stay order.

## IV.   The Remaining Stay Factors Foreclose Relief.

In light of the Supreme Court's opinion, it is impossible for Defendants to show the extraordinary circumstances required for emergency relief. *See Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) ("Although our interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases.").

*Likelihood of success on the merits.* Defendants cannot show a likelihood of success on an argument the Supreme Court has already

rejected. Six Justices held that the injunction "promotes child safety" and "permits the State to shield children from unfit parents by enforcing child-abuse laws." *Mirabelli*, slip op. at 6. This holding binds this Court.

*Irreparable harm.* Defendants identify no concrete, imminent harm. The injunction does not compel disclosure to abusive parents—the Supreme Court itself so found. California's mandatory reporting laws, dependency proceedings, and removal authority remain fully operative. Defendants have identified no specific parent who "would engage in abuse" as a result of the injunction, nor any specific child at risk. Their argument rests on the same generalized, speculative harms that the Supreme Court weighed and rejected.

*Balance of equities and public interest.* The Supreme Court has already reversed this Court's prior assessment. Where this Court found that the "public interest in protecting students" favored a stay, Dkt.13 at 13, the Supreme Court held that "the injunction here promotes child safety by guaranteeing fit parents a role in some of the most consequential decisions in their children's lives." *Mirabelli*, slip op. at 6. This Court should not reinstate an equitable finding the Supreme Court has overturned.

Indeed, any modification would sow the very confusion that Defendants claim to wish to prevent. In the four days since the Supreme Court's order, school districts across California have already begun implementing the injunction. The California School Boards Association

("CSBA") has issued detailed guidance to local educational agencies instructing them, among other things, to "[r]efrain from misrepresenting information about a student's gender presentation or incongruence" if asked by a parent, to "respect" parental objections to the use of certain names and pronouns, and to "[t]rain staff on this change in the law." CSBA, *Supreme Court Strengthens Parental Notification Rights for Gender Transitions* (Mar. 2026).[2] CSBA's guidance notably instructs LEAs that "[t]here are no exceptions to the requirements" of the district court's order as it applies to parents. *Id.* Modifying the injunction now—after school districts have begun compliance in reliance on the Supreme Court's ruling—would generate precisely the disruption Defendants claim to oppose.

## CONCLUSION

Defendants' emergency motion should be denied. The argument that parental notification threatens children has been Defendants' central litigation theme throughout this case. The district court rejected it on detailed factual findings. This Court accepted it. The Supreme Court reversed, holding that the injunction "promotes child safety" and permits the State to protect children from unfit parents through existing law. These holdings are law of the case, and this Court has no authority to deviate from them. The notice requirement tracks the Supreme Court's

---

[2] http://link.csba.org/m/1/85483239/02-b26064-7c255d0eac34462e801b50 8c5474c878/2/755/17dcd54a-7dc7-40a7-a5bf-138728ed8bec.

holdings and is sustained in full by the parents' claims. School districts across California are already in compliance. And no emergency exists that would warrant this Court in modifying an order that the Supreme Court examined and restored eight days ago.

Respectfully submitted,

Dated: March 10, 2026  By: */s/ Paul M. Jonna*
         Charles S. LiMandri
         Paul M. Jonna
         Jeffrey M. Trissell
         William T. Duke
         LiMANDRI & JONNA LLP
         Post Office Box 9120
         Rancho Santa Fe, CA 92067
         Telephone: (858) 759-9930

         Peter Breen
         Michael McHale
         Christopher J.F. Galiardo
         THOMAS MORE SOCIETY
         309 W. Washington St., Ste. 1250
         Chicago, IL 60606
         (312) 782-1680

         *Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing document satisfies the type-volume requirements set out in Federal Rule of Appellate Procedure 27(d)(2)(A) as it contains 4,460 words, and was prepared using Microsoft Word in Century Schoolbook, 14-point font, a proportionally spaced typeface.

*/s/ Paul M. Jonna*
Paul M. Jonna

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system and by email to all counsel of record.

*/s/ Paul M. Jonna*
Paul M. Jonna